No. 41.—WILLIAM J. MORGAN, administrator, plaintiff in error, *vs.* MARY MORGAN, executrix, *et al.* defendants in error.

[1.] Twenty years' possession of the mortgaged property by the mortgagee, under the mortgage, will, *prima facie*, bar the mortgagor's right to redeem, and this is true whether the mortgage is upon real estate or personal property.

[2.] But no length of time will bar the mortgagor's right to redeem, so long as the mortgagee recognizes the conveyance as a subsisting mortgage. Any acts or circumstances which show a recognition of the mortgage within twenty years, will prevent the running of time against the mortgagor, and the time will begin to run only from the latest recognition within that period. It lies upon the mortgagor to show such recognition.

[3.] The mortgagee in possession, holds the property in character of trustee for the mortgagor, and may disavow the trust and disclaim the mortgage, and in that event the time of limitation provi ed by the Statute for the recovery of the property at Law, will begin to run in his favor from the disavowal; and if he then holds the possession for the statutory term, the mortgagor's right to redeem is barred.

VOL X 38

[4.] When the mortgagee relies upon the Statute after a disavowal of the trust, it lies upon him to show the disavowal, and to bring home to the mortgagor knowledge of the fact, and this knowledge cannot be shown constructively.

[5.] When a supplemental bill is filed, bringing new parties into Court, it is as to them a new suit, and is to be considered as being commenced when the supplemental bill is pleaded in office.

In Equity, in Monroe Superior Court. Tried before Judge STARK, March Term, 1851.

William Morgan, the complainant's intestate, on the 23d day of January, 1828, executed to James B. Morgan, defendant's testator, a mortgage on a negro woman, Mary, and her two children, to indemnify him, as his security to one Edwards, for a debt due 25th December, 1828. The negroes, soon after the execution of the mortgage, went · into the possession of the mortgagee, where they remained until his death, in May, 1844. By his will, which was admitted to probate in June, 1844, he bequeathed the negroes to his wife, Mary Morgan, the defendant, and to two minor children, of whom Robert Bowman is the guardian, (and who is also a defendant.) The executor and executrix qualified on the first Monday in June, 1844, and soon after distributed the estate of the said William B. Morgan, including the mortgaged negroes, the receipts for which were recorded January 1st, 1845.

On the 7th May, 1847, the bill to redeem said negroes was filed, and served August 5th, 1847, upon the mortgagee's representatives, charging that the mortgagee took said negroes under a contract that their hire should repay him the debt which he had paid to Edwards, and that mortgagee frequently recognized said mortgage, which was proved on the trial to have been in the year 1839.

The defendants filed answers, stating, among other things, that the estate had been paid out and distributed.

Complainant filed a supplemental bill, which was served the 3d September, 1849, making Mary Morgan, as legatee, and Bow-

man, as guardian of the minor children of James B. Morgan, also legatees, parties.

Defendants pleaded the Statute of Limitations, to wit: that seven years elapsed between the last recognition of the mortgage by the mortgagee and the filing the original bill, ten years to the supplemental bill, and four years from the recording of the will and the distribution of the property, to the filing of the supplemental bill.

At the trial term, complainant having deceased, his administrator was made a party.

Among other things, the Court charged the Jury, "If the parties having possession of this property came into the possession of it more than four years before the filing of the supplemental or amended bill, as legatees under the will of the mortgagee; if from that time, they claimed the property as their own, and remained in possession of it as their own, without any recognition of the mortgagor's right to redeem; if an account of the distribution of the property was returned and recorded in the Clerk's office of the Court of Ordinary, and if the mortgagor for four years failed to assert his right of redemption by suit against those to whom the property was distributed, he is, in the opinion of the Court, forever barred. The seizure and appropriation of the property under the will, the giving of publicity to the transaction by spreading the receipts for the property upon the records of the Court of Ordinary, constitutes such a tortious conversion of the property as terminates the trust, and the amicable possession, and the mortgagor must take notice of it at his peril—if he has failed to do so for four years, he is barred."

To which counsel for complainant excepted.

W. W. ARNOLD and HARMAN, for plaintiff in error.

POE & NISBET and TRIPPE, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] From the analogy between the right of a mortgagor to

redeem in Equity, and a right of entry at Law, it is settled, that the right of redemption will be barred by the lapse of twenty years. Without applying the bar as a statutory rule, Courts of Chancery will presume a release or satisfaction of the equity of redemption from lapse of time. The relation of mortgagor and mortgagee is peculiar. The latter in possession is usually called a trustee for the former. In England, and very generally in our States, the Courts of Law consider the mortgagee the holder of the legal title, and the possession of the property as trustee for the mortgagor. In Georgia we do not concede that the legal estate passes to him. Here and elsewhere, however, in Courts of Equity, the mortgagor is recognized, for all civil and political purposes, as the owner of the property. A mortgage is in truth but a contract of security. The debt is the principal and the mortgage is the accessory. It is a contract by which a lien is given to the creditor for the security of his debt. He has an interest in the property until his debt is paid, and that is all. Whilst the mortgagor is the sole owner, holding it subject to the incumbrance, with the right, before condition broken, to remove the incumbrance, by paying the debt, and with the right ever afterwards to redeem, until a title may be perfected in the mortgagee by a possession of twenty years. Such are the general and just views of a mortgage, taken at this day, by the Courts of England and America. The technical and absurd notions of the Courts of Law of an earlier day, have given way before better sense. " The case of mortgages, (says Ch. *Kent,*) is one of the most splendid instances in the history of jurisprudence, of the triumph of equitable principles over technical rules, and of the homage which those principles have received by their adoption in the Courts of Law. Without any prophetic anticipation, we may well say, " returning Justice lifts aloft her scale." With us, usually the mortgagor remains in possession. It is very common, in England, and is sometimes the case here, that possession is taken by the mortgagee. When that is done, with no contract as to the application of rents, issues and profits, he is liable to account to the mortgagor, and the mortgage debt bears interest. When in possession, he is in character of trus-

Morgan vs. Morgan et al.

tee. That is to say, he holds the property with duties and obligations analagous, in some respects, to those of a trustee, although in other respects quite different. It is in a secondary sense that the character of trustee belongs to him, and he acquires it constructively. There is no trust created by the contract, and it is in subordination to the main purposes of the contract. The ground upon which a mortgagee is for any purpose considered a trustee, is stated by *Angell* to be, " the partial and limited right which, in equity, he is allowed to have in the whole estate, legal and equitable." Hence it is, that although the Statute of Limitations will not apply to a direct trust, yet a mortgagee is allowed to set up lapse of time as a bar to the equity of redemption.

The term of limitation is the same, whether the mortgage be upon real or personal estate. As, for many years in England, real estate was held of vastly greater value than personalty, and as securities by mortgage upon personal property were relatively rare, we find but little note in the books of that country of distinctions between mortgages upon real estate and mortgages upon personal property. The rule that twenty years' possession under a mortgage raises a presumption of a release, or extinguishment of the equity of redemption, is derived from the statutory bar to a writ of entry, by analogy. Why then, it is asked, will not the analogy drawn from the Statute, make the possession of personal property under a mortgage for the term which will bar an action of trover, also a bar in Equity? In applying equitable bars, the Courts will consult the analogy of the Statute, but are not bound by it. The right to redeem after condition broken, is purely an equitable right—it is solely of equitable cognizance. Legal rules have nothing to do with it. Against it, if he is to prevail, the mortgagee must set up an equitable defence. He must, if he relies upon time, show a possession of such duration as will, according to all the equities which spring out of the relation which he bears to the mortgagor, constrain a Chancellor to presume that he has a title to the property. A possession under a mortgage, is a very different thing from possession beginning adversely. Hence, the reasons which make

possession in the one case, and in the other a title, are essentially different. In the former case, the possession begins by consent; it originates in contract; it is continued as thus derived, and if, without any intervening recognition of the mortgage, it runs on to twenty years, Equity will presume that, in accordance with the contract itself, the mortgagor has been satisfied in his equity of redemption or has released it.

In the latter case, the possession may begin adversely to a better title—it is presumed to begin in defiance of all other titles— and if it continues for the term which the Statute has prescribed, it becomes a title, not so much by a presumption that an adversary claimant has been satisfied, as because the law, upon grounds of policy, has so ordained it. The policy of the rule in Equity, as applicable to mortgagors, is infinitely less urgent than that which requires a limitation to suits at Law to recover property. It is the same, to wit: the quieting of possession, and the prevention of litigation, but it is greatly reduced in intensity. Such being a just view of this subject, why should possession of personal property under a mortgage, for a term less than that which gives title in case of realty, constitute a bar? I see no reason in Equity why it should, especially here, where personal property is of equal, if not greater value than real estate; and it is upon these views of the equitable character of the mortgagor's right, and because we are not bound at all by the Statute, that we adopt the English term of twenty years, rather than our own statutory term of seven years. We hold it equitable and consistent with sound policy, that in no case should possession under a mortgage, short of twenty years, bar the equity of redemption. When the mortgagee disavows the mortgage, *then* we shall see that a different rule as to the term applies. In relation to the general position that the equity of redemption is barred after twenty years' possession in the mortgagee, see the following authorities: *Aggas vs. Pickerell,* 3 *Atkyn's* R. 225. 2 *Peer Williams,* 287. *Mr. Cox's Note.* 3 *Atk.* R. 313. *Smith vs. Clay,* 3 *Brow.* 639, *note. Hodle vs. Healy,* 1 *Ves. & Beame,* 536. *Demarest vs. Wynkoop,* 3 *Johns. Ch.* R. 129. *Kane vs. Bloodgood,* 7 *Ibid,* 90. 1 *Paige,* 48. *Lamar vs. Jones,* 3 *Har.*

Morgan *vs.* Morgan *et al.*

& *McHenry,* 328.    1 *Jac. & Walk.* 83.    1 *Marsh.* 519.    *Elmendorf vs. Taylor,* 10 *Wheat.* 168.    *Chlomondelly vs. Clinton,* 2 *Jac. & Walk.* 191.    *Dexter vs. Arnold,* 2 *Sum.* 152.    4 *Kent,* 186.    2 *Sum.* 401.    *Lansing vs. Godet,* 9 *Cow.* 346.    *Angell on Limitations,* 494.    Particularly where the mortgage is on personal property, see *Wheeler's Law of Slavery,* 171, *and the cases there cited.*

[2.] The rule thus stated, does not prevail against the mortgagor when he lies under disability, as infancy, coverture, &c. The presumption of a release to the mortgagee of the equity of redemption, or the presumption of a bar to the mortgagor's right to redeem, may be rebutted.    It is a general and fixed rule, that *no length of time* will bar the right of the mortgagor to redeem, so long as the mortgage is treated by the mortgagee as subsisting.    He is in possession under his contract of mortgage, and with the consent of the mortgagor, his possession is amicable and he is a trustee for the mortgagor; for these reasons, so long as he recognizes his relations to the mortgagor, he gains no equity by lapse of time—his possession is the possession of the mortgagor, and cannot be adverse.    The lapse of twenty years will, when proven, protect him, *prima facie,* and if no proof is adduced to show a recognition of the mortgage within that time, he will remain protected; but if it is made to appear that he has recognized it, then, up to the date of the last recognition, time has not begun to run in his favor, and the twenty years' term only begins to run from ·that date.    It lies upon the mortgagor to show such facts or circumstances as will prevent a bar. *Baron vs. Martin,* 19 *Ves.* 326.    4 *Kent,* 187, '8.    3 *Ves.* 17. 2 *Ibid,* 83, 399.    1 *Wash.* 14.    6 *Mad.* 181, 274.    3 *Murph.* 228.    9 *Ves.* 292;    *Cooper's Eq. Rep.* 1.    *Ibid,* 161.    9 *Wheat.* 684.    3 *Sum. R.* 169.

Among those things which will remove the presumption of a release of the equity of redemption, and prevent the running of time against the mortgagor, are the following : an accounting and settlement between the parties.    2 *Vern.* 377.    5 *Bro. Par. Cas.* 187.    Any act of the mortgagee, by which he acknowledges the transaction to be still a mortgage, within twenty years, as

if by will he disposes of the money in case the mortgage is redeemed. 2 *Cruise's Dig.* 156. 2 *Cow. R.* 397. 2 *Cox's R.* 290. 1 *Johns. Ch. R.* 394. 1 *Wash. R.* 18.

Time does not bar the mortgagor, if the mortgage is in the nature of a Welch mortgage ; that is, where no time is stipulated for payment, but a conveyance is made to the mortgagee to hold possession until the perception of the rents and profits shall discharge the debt. In such a case the morgagee takes the estate, subject to a perpetual account. In this case there was a parol agreement, subsequent to the execution of the mortgage, that the mortgagee should hold possession until the hire of the negroes should pay the debt. The mortgage itself, however, contained no such stipulation. The parol agreement does not, therefore, characterize the mortgage. *Ora vs. Henning,* 1 *Vern.* 418. 1 *Merivale R.* 114.

So, if the mortgagor continues in possession, the limitation does not apply, and it is said that even the possession of a part of the mortgaged property will keep the mortgage open. 2 *Cruise,* 161. 1 *Johns. Ch. R.* 594. *Rakestraw vs. Brewer, Sel. Cas. in Ch.* 55. When any species of fraud has been practised by the mortgagee at the time when the mortgage was made, the mortgagor may redeem. I have no doubt but that in this, as in other cases, time will run against him from the discovery of the fraud. 2 *Cruise,* 161. 1 *John. Ch. Rep.* 595. *Ibid,* 402.

A very interesting question touching this subject, is mooted in the books, to wit : whether *verbal* admissions or *parol* acknowledgments are sufficient to establish the fact, that the mortgagee has treated the conveyance as a mortgage within twenty years. Chancellor *Kent,* in *Marks vs. Pell,* does not decide it, but obviously inclines against their sufficiency. In *Dexter vs. Arnold,* Judge *Story* reviews the authorities, and expresses himself strongly against their sufficiency ; but he does not decide the question. In *Barron vs. Martin,* Sir *William Grant* thought the parol evidence admissible ; and Ch. *Kent,* in his Commentaries, concedes that the presumptions against the mortgagor may be rebutted by parol proof. All of these able Chancellors, however, concur in saying, that the proof must be *clear* and *unequivocal.*

No point of this sort is made in this case. We, therefore, leave it as it stands in the books, without an opinion. In England, the doubts of the Courts have been solved by Statute. By the *Stat.* 3 *and* 4 *Will. IV. ch.* 27, §8, it is enacted, that a mortgagor shall be barred by twenty years' possession of the mortgagee, unless there be an acknowledgment in writing, and the Statute runs from the day when default is made. By 7 *Will. IV. and* 1 *Vict. c.* 28, part payment of principal or interest is made equivalent to an acknowledgment in writing. See *Dexter vs. Arnold,* 3 *Sum. R.* 160. *Whiting vs. White,* 2 *Cox's Rep.* 290. *Perry vs. Marston,* 2 *Bro. Ch. R.* 397. *Reekes vs. Postlethwaite, Coop. Eq. R.* 160. *Banon vs. Martin, Cooper's Eq. R.* 189. *S. C.* 19. *Vesey's R.* 326. *Marks vs. Pell,* 1 *Johns. Ch. R.* 594. *Hughes vs. Edwards,* 9 *Wheat. Rep.* 489. 4 *Kent's. Com.* 189.

[3.] It is farther well settled, that if the mortgagee disavows the mortgage, denies the amicable character of his possession, and sets up a title adverse to the claim of the mortgagor's right to redeem within twenty years, and a knowledge of the disavowal is brought home to the mortgagor, the Statute of Limitations will, from that moment, run in his (the mortgagor's) favor. This is true in case of technical trusts, to which lapse of time is no bar. It is *a fortiori* true of trusts constructively created, as is that of a mortgagee in possession. Avowing title in himself, the tenant asserts a possession adverse to all the world; he throws off his character of trustee, and denies the relation of mortgagor and mortgagee. The result is, that if this is known to the *cestui que trust,* to the mortgagor, he is put upon exercising diligence. He must pursue his remedy as in any other case of adverse possession within the *statutory term,* or lose his right. The position of the mortgagee is that of defiance, and if he acquiesces in that position until the statutory term runs out, the award of justice, and the policy of the law declare, that his title, good or bad, is forever barred. And when a mortgagee disavows his trust, repudiating the mortgage and the rights of the mortgagor under it, it becomes a case where Equity will follow closely the analogy of the Law, and will apply the *statutory*

Morgan *vs.* Morgan *et al.*

*term.* The question there is not whether there is a *presumption* of a release of the right of redemption from lapse of time, upon a view of the relation of the parties, but simply is, has the mortgagor complied with a rule of law, and pursued his right within time. The *title* to the property being openly avowed, the parties occupy the position of counter claimants, just as if no mortgage had been made ; and it matters not that the mortgagor must go into Equity for his *remedy.* In such a position our Statute requires that the suit be brought (in case of negroes, as here,) within four years from the accrual of the right of action. And in just such a case where the question is made in a Court of Equity, the Statute of Limitations receives the same application in Equity as in Law. In *Bloodgood vs. Kane,* Chancellor *Kent* analogising a disavowal of a trust to the discovery of a fraud, meets the very point I am now considering, in these words: " But after a refusal to pay and a denial of title, the possession becomes adverse, and it is as just and reasonable that the Statute should run and bar the party, who is apprised that his right is denied, and yet sleeps on that right, as that it should bar the party who has a knowledge of the fraud and neglects his remedy." 7 *Johns. Ch. R.* 123. Lord *Eldon,* in *Harwood vs. Oglander,* (6 *Vesey,* 199. 8 *Ib.* 106,) remarks, " If a trust subsisted, so that the trustee could recover, as having the legal estate, it would follow that the right of the *cestui que trust,* as against the trustee, could not be barred. But supposing the trustee was to deny the right of the *cestui que trust,* and assume absolute ownership, is there any case in Equity that would allow the latter his remedy beyond the period limited for the recovery of *legal estates at Law?*" These doctrines are familiar, and need not be here fortified, especially as they have been several times recognized by this Court. *Spaulding vs. Grigg,* 4 *Geo. Rep.* 75. *Keaton vs. Greenwood,* 8 *Ibid,* 97. *Ang. on Lim.* 171. 2 *Jac. & Walk's Ch. R.* 1. 7 *Johns. Ch. R.* 90. 9 *Pick.* 212. 4 *Serg. & Rawl.* 310. 10 *Peters,* 223. 3 *Gill. & Johns.* 389. 3 *Sum.* 475.

The questions which I have thus presented, grow out of the assignments in this case. We do not consider that in the opin-

ions of the Court below, either expressed or withheld, there is any conflict with the opinions we now announce upon these points. However the language of the presiding Judge may possibly admit of a contrary construction in some particulars, and however his declining to instruct according to some of the requests of the plaintiff in error, may seem to imply some departure from the principles we now lay down, yet we believe that between his opinions, fairly interpreted, and our own, there is no conflict. We therefore affirm his ruling upon all the questions thus far considered.*

[4.] There is a point however, upon which we cannot agree with our learned brother of the Circuit Bench. I have before stated that after a disavowal of the mortgage, the mortgagor is subject to the limitation which the Statute prescribes. In this case, the mortgage being upon personal property, that term of limitation is four years. His Honor so instructed the Jury. The mortgage, it appears, being in possession as late as the year 1839, recognised the conveyance as a mortgage, and the original bill was filed to redeem in 1847; and a supplemental bill, making the legatees under the will of the mortgagee, who had died, parties defendants, was filed in 1849. According to the principles held by the Court below, and herein affirmed, the mortgagor was not barred by the lapse of twenty years. But the proof shows that by his will, which was passed to probate in June, 1844, he bequeathed the mortgaged property to his wife, who is his executrix, and a defendant to the bill, and to his two children, who were then minors, and for whom the defendant, *Bowman,* is guardian. It is further in evidence that the executors of the will distributed his estate, including the mortgaged negroes, taking from the legatees receipts, which were recorded in the books of the Ordinary in January, 1845. In view of this state of facts, the Court instructed the Jury, after telling them that if the defendants, the legatees of the mortgagee, had held possession of the property as legatees under his will, more than four years from the filing of the supplemantal bill, holding and

---

*The Reporter has copied only so much of the Judge's opinion as relates to the point upon which we differ with him. In the record, however, his opinion comes up upon all the questions discussed and were excepted to.

claiming the same as their property, without recognising the mortgagor's right to redeem; "that if an account of the distribution of the property was returned and recorded in the Clerk's office of the Court of Ordinary, and if the mortgagor, for four years failed to assert his right of redemption by suit against those to whom the property was distributed, he is in the opinion of the Court, forever barred. The seizure and appropriation of the property under the will, the giving of publicity to the transaction by spreading the receipts for the property upon the records of the Court of Ordinary, constitute such a tortious conversion of it as terminates the trust, and the amicable possession, and the mortgagor must take notice of it at his peril. If he has failed to do so for four years, he is barred." We concede that the disposition of the property by will, its distribution by the executors, and the record of the receipts for it, may constitute a disavowal of the trust. They are such acts on the part of the mortgagee and those who claim under him, as constitute a tortious conversion. But we cannot admit that the mortgagor must take notice of them at his peril. He must *know* that they existed. The burden lies upon the mortgagee to bring home to him a knowledge of them. He must affirmatively show that the acts upon which he relies to constitute a disavowal of the trust was *known* to the mortgagor. Express *notice* is not indispensable to be shown, but *knowledge* is indispensable. If the defendants had gone one step farther in this case, and shown that the mortgagor was present at the probate of the will and heard it read, or had read it, or had seen the receipt of the legatees for the property, the proof would have been sufficient. The doctrine is, that the knowledge of the disavowal must be positively shown, and cannot be constructive. This is altogether reasonable. The possession begins amicably, and perhaps continues so for years. The mortgagor has reason to believe that it so continues. He rests upon contract and upon confidence reposed. He has cause to believe that the mortgagee will respect the maxim, *quieta non movere*. He is not presumed to suspect an adverse claim—a claim in repudiation of the mortgage. He is not, in the nature of the case, put upon inquiry to find a dis-

Morgan *vs.* Morgan *et al.*

avowal. Nothing is required of him by the nature of the mortgagee's possession. On the contrary, the mortgagee has no right of property; he is a trustee. His right of protection by the Statute, springs out of an act of *his own*, a disavowal. Under such circumstances, I say it is reasonable that the mortgagee, relying upon the Statute, should be held not only to show his disavowal of the mortgage, but also to show that the mortgagor knew it. It is very clear, that no secret disavowal; no acts of ownership done in a corner; no disclaimer of the mortgage made to third persons, will, *per se,* authorize the running of the Statute, and support a title, which can alone be sustained by a change from a fiduciary to an antagonistic position. The leading idea is this: Inasmuch as the right to the protection of the Statute depends upon an act of his own, he must show the act, and the mortgagor's knowledge of it, or his plea of the Statute is not sustained. As in all other cases, a party movant, asserting a right must make out his case—he must prove his title. A plaintiff relying upon a title in trover, by limitation, must show at what *time* he acquired possession, and how long he held it. So, also, a defendant generally relying upon a bar. With much stronger reason in this sort of case, must a party be held to show, *that* upon which the Statute begins to run in his favor, to wit: *knowledge of his disavowal of his trust.* For let it be remembered, that his right does not grow out of the disavowal alone, but also out of the mortgagee's knowledge of it. Until he *knows,* he is not warned to see. He can never be in laches until he knows that his title is denied. The rule in this case is the same that it is in case of any other trust. The reasons for it are the same. In *Baker vs. Whiting,* Judge *Story* holds, that the denial or repudiation of the trust, to admit the running of the Statute in favor of a trustee, must be *open,* and must be *brought home to the knowledge* of the parties in interest. 3 *Sum. R.* 466. In *Keaton vs. Greenwood,* this Court has decided that a trustee is not protected by the Statute, unless he denies the trust and claims the property adversely to his *cestui que trust,* the *cestui que trust having knowledge of that fact.* 8 *Ga. Rep.* 103.

The rule obtains in all analogous cases. Thus the possession

of one tenant in common is the possession of the other, and the Statute does not run in favor of a tenant in common, until he ousts his co-tenant, or denies the tenure, and receives the rents, issues and profits to his own use. The repudiation of the tenancy in common must be known to the other tenant. *Cowp.* 217. 2 *Scho. & Lef.* 628. 3 *Peters,* 43.

So, also, the possession of a tenant is the possession of his landlord, and the Statute does not run in his favor until he disavows the relation and sets up an adverse possession. This is a relation very analogous to that of mortgagor and mortgagee in possession. It is too obvious to require exposition. In the case of *Whaley vs. Whaley,* the Court of Appeals of South Carolina held, " That a tenant entering upon land by the bare permission of the landlord, and paying no rent, in order to claim by adverse possession, must *disclaim the tenancy, and give notice of the fact to the landlord."* 1 *Speer. R.* 230 *to* 236. It is worthy of note, that this case puts a construction upon the words in the books, as applicable to this subject matter, to wit : " bring home knowledge." The Court of Appeals in South Carolina obviously use them as synonymous with express notice. The doctrine of this case in a similar case was recognized by this Court in *Spaulding vs. Grigg,* 4 *Ga. Rep.* 75. See also 1 *Nott & McCord,* 370. 3 *Peters,* 43. We reverse the decision of the Court below on this point, not doubting but that our judgment is sustained upon principle and by the authorities.

[5.] In this case it was contended that the supplemental bill was but part and parcel of the original bill, and related back to the time of filing that bill. If this were true, it would affect the application of the Statute. The supplemental bill brought new parties defendants into Court, to wit : the legatees under the will of the mortgagee, and as to them is to be considered as a new suit. By our Statute, actions are declared to be instituted when the writ is filed in office. *Cobb's New Digest,* 474. So we hold suits in Equity are to be considered as being instituted when the bill is filed in office. We consider that *quoad* the parties defendants brought in by the supplemental bill, suit was commenced

against them when that bill was filed in office.    Upon this point the decision of the Court is affirmed.

Let the judgment be reversed.