No. 36.—W. B. Scott, administrator, &c. plaintiff in error, *vs.* John Haddock and Wife, defendants.

[1.] Where a guardian had been appointed for two orphan children, and in returning to the Court of Ordinary a schedule of their property, in which a certain slave, by the name of Harry, was returned as a part of their estate, and was hired out as their property, and annual returns thereof made to the Court of Ordinary, for ten consecutive years, by such guardian: *Held,* in a suit by one of the orphans, after her intermarriage, for her share of said slave Harry and his hire, against such guardian, that he was estopped, on the ground of public policy and good faith, from

denying the title of the orphans to the slave in question, and showing an independent title thereto in himself, *anterior* to his appointment as guardian·

[2.] The Statute of Limitations d>es not run against a direct or express trust, so long as the trust continues and is acknow ·dged to be a *continuing, subsisting trust;* but when the trust is denied by the trustee, and he claims to hold the trust funds or the trust property as his own, *adversely* to his *cestui que trust,* the latter having *knowledge* of that fact, the Statute will begin to run in favor of such trustee, from the time of such adverse claim or possession.

[3.] Where there are two or more *co-existing* disabilities in the same person, at the time the cause of action accrues, as infancy and coverture, the Statute of Limitations does not run until both or all are removed.

[4.] But where there exists but *one* disability, at the time the cause of action accrues, other disabilities, arising afterwards, cannot be tacked to the first disability, so as to prevent the operation of the Statute of Limitations.

[5.] Disabilities which bring a person within the exceptions of the Statute, cannot be piled one upon another, so as to defeat its operations; but a party claiming the benefit of the proviso in the Statute, can only claim the benefit of the *disability* which existed when *the cause of action accrued.*

[6.] Where a bill was filed by husband and wife, to recover the property of the wife in the hands of her guardian, the latter having repudiated the trust and claimed the property as his own, such *adverse* claim of the guardian being asserted during *the coverture,* and after the wife was *twenty-one years of age: Held,* that the wife was protected from the operation of the Statute of Limitations, she being a *feme covert* at the time the cause of action accrued.

In Equity, in Crawford Superior Court. Tried before Judge STARKE, August Term, 1851.

The bill charges, that Willis S. Scott was appointed guardian of John F. and Cynthia Prosser, minors of John Prosser, in the year 1821. His first return was made in 1822, in which he charges himself with a negro boy named Harry, the subject of the suit, and also for his hire. For ten consecutive years, he continued in his returns to account for the hire of the boy. His last return was made in 1831. Cynthia Prosser was born some time in the year 1816, and was married to John Haddock in 1835. On the 5th of January, 1836, Haddock had a partial settlement with Scott, as his wife's guardian, giving him a receipt for the articles turned over, and releasing him from all further claim, as such guardian, except as to the interest in

the boy Harry.   Willis S. Scott subsequently died, and   Willis B. Scott was appointed administrator on his estate.

The bill prays that defendant may come to an account and settlement with complainants, as the administrator of Willis S. Scott, deceased.

The defence set up by the answer, was the Statute of Limitations ; and also, that the negro boy, Harry, was the property of Willis S. Scott, acquired by his intermarriage with the mother of Cynthia Haddock, one of the complainants, who became the owner of the slave by purchase, subsequent to the death of her first husband, and prior to her intermarriage with defendant's intestate ; and that he was only returned by Scott, as guardian, as the property of John Prosser's orphans, to prevent his seizure and sale under executions outstanding against said Scott.

On the trial, evidence was offered by the defendant to sustain this last plea, which was repelled by the Court, and defendant, by his counsel, excepted.

The defendant read in evidence, a bill filed by complainants against Willis S. Scott, returnable to August Term, 1838, of Crawford Superior Court, for the recovery of the same property embraced in the present bill, which was answered on the 20th July, 1839, by Willis S. Scott, and the same defence as to the title of the boy, Harry, pleaded ; which bill was dismissed at the August Term, 1842.

Counsel for defendant requested the Court to charge the Jury, " that if the bill filed in 1838, and dismissed in 1842, was for the same property, and that more than four years had elapsed from the dismissal of said bill to the commencement of the present suit, that there was such an adverse holding on the part of Willis S. Scott, as to constitute a point from which the Statute of Limitations commenced to run, and that complainants were barred of their right of action ; which charge the Court refused to give, but did charge, "that in his opinion, the right of action did not accrue until Willis S. Scott asserted a right to the property, and gave complainants notice of the same ; and that if Mrs. Haddock was then a married woman and of

full age, the defendant is not protected by the Statute of Limitations."

To which, counsel for defendant excepted, and upon these exceptions have assigned error.

POE & NISBET, STUBBS & LESTER and CULVERHOUSE for plaintiff in error.

HALL & HUNTER, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first assignment of error which we shall notice, is the rejection by the Court below, of the bill of sale offered by the defendant, to show that the slave, Harry, never was the property of the orphans of John Prosser, but the property of Willis S. Scott, acquired by virtue of his intermarriage with the mother of Mrs. Haddock, one of the complainants. The record shows, that Willis S. Scott was appointed guardian of John F. and Cynthia Prosser, orphan children of John Prosser, deceased, by the Court of Ordinary of Jones County, in the year 1821. In his first return made after his appointment as such guardian, a schedule of the property belonging to his wards was rendered to the Court of Ordinary, upon oath, in which the slave, Harry, is included as a portion of their property ; and he continued to charge himself as their guardian, with the hire of said slave, in his returns to the Court, for ten consecutive years.

The bill of sale, offered in evidence, was made by Sally Whitworth, to Mrs. Prosser while she was a widow, and before her intermarriage with Willis S. Scott, which conveyed the boy Harry to her. Now, Scott, the administrator, says, in his answer to the bill filed by Haddock and wife (the latter of whom is one of the orphans of John Prosser) for her share of the slave, Harry, and his hire, that it is true Willis S. Scott did return the slave, Harry, to the Court of Ordinary as the property of the orphans, for the purpose, and with the design, of preventing the slave, Harry, from being seized and sold under ex-

ecutions then existing against Willis S. Scott, as his property, he having acquired a title thereto, by virtue of his intermarriage with Mrs. Prosser, to whom the slave had been previously conveyed by Sally Whitworth. The question is, could the defendant's intestate, Willis S. Scott, if now in life, be permitted to shew, as against the complainants, that the slave, Harry, was *not their property*, but *his individual property*, in the face of his *solemn admissions* to the contrary, made in his returns to the Court of Ordinary, as before stated? We are of the opinion that he could not; and consequently that his administrator is in no better condition. He would be estopped, on the ground of public policy and good faith, from repudiating his solemn acts and admissions, so repeatedly made in the course of the judicial proceedings had in the Court of Ordinary in relation to that fact. 1 *Greenleaf's Ev.* 249, §§207, 208. *Quick and Wife vs. Staines*, 1 *Bos. & Puller*, 293.

[2.] The next and main ground of error insisted on is, that the Court below refused to give to the Jury the instruction asked in regard to the Statute of Limitations, and in charging them that the complainants were not barred by the Statute. It appears from the record, that Cynthia Haddock (formerly Cynthia Prosser) was born in 1816, and was married in 1835, being under twenty-one years of age at the time of her marriage. In 1836, Haddock and his wife, Cynthia, filed a bill against Willis S. Scott, her guardian, for her share of the slave, Harry, and his hire. In July, 1839, Scott answered the bill, in which he claimed the slave as his own, and denied the right and title of the complainants thereto. The bill filed by Haddock and wife in 1836, was dismissed in August, 1842. The present bill was filed in 1848 against Willis B. Scott, the administrator of Willis S. Scott, the latter having died intestate.

The instruction asked of the Court below to the Jury, by the counsel for the administrator, assumes the position, that the Statute of Limitations commenced running in favor of the intestate, from the time of filing his answer to the first bill, in July, 1839, at which time he claimed the slave, Harry, as *his own property* and *denied* the title of his *cestui que trust*; that the

answer of the intestate, to the complainants' bill, asserted an *adverse* title to the property in controversy, of which his *cestui que trust* had *knowledge,* and more than four years having elapsed from the time of such adverse holding of the property, to the time of the commencement of the present suit, the complainants' right to maintain the same, was barred by the Statute.

The instruction asked, the Court refused to give to the Jury; but instructed them "that the right of action did not accrue until Willis S. Scott asserted a right to the property, and gave complainants *notice* of the same ; and that if Mrs. Haddock was then a married woman, and of full age, the defendant is not protected by the Statute of Limitations." In view of the facts of this case, there was no error in the Court below, in refusing the instructions asked, or in that which was given to the Jury.

The possession by Scott of the slave, Harry, was consistent with the title of his *cestui que trust,* until July, 1839, when he repudiated the trust, and claimed to hold the property as his own, *adverse* to their title. The Statute then did not commence to run, according to the general rule, in favor of the intestate, until July, 1839, when he *repudiated the trust.* Mrs. Haddock was an infant at the time of her marriage, and continued a *feme covert,* until the *repudiation of the trust* by the trustee, in 1839.

[3.] The question has been discussed, particularly by the counsel for the plaintiff in error, whether *cumulative* disabilities, as infancy and coverture, can be tacked together, so as to operate as a bar to the Statute, until *both* disabilities shall be removed. The rule in relation to that question, we understand to be, that where there are several *co-existing* disabilities in the same person, *at the time* the right of action accrues, he or she is not required to sue, in order to avoid the operation of the Statute, until *all* are removed. If, for example, as in this case, at the time of the repudiation of the trust by Scott, the trustee, Mrs. Haddock had been an infant and a *feme covert,* the Statute would not have commenced to run against her until *both* disabilities had been removed ; for the reason, that both disabilities existed *at the time the cause of action accrued.*

[4.] But if, at the time of the repudiation of the trust by

Scott, the disability of *infancy only*, had existed, the subsequent disability of coverture could not be tacked to that of infancy, so as to prevent the operation of the Statute, until both were removed; for the reason, that at *the time the cause of action accrued*, there was only *one* disability which existed, to have prevented an immediate institution of the suit.

[5.] Disabilities which bring a person within the exceptions of the Statute, cannot be piled one upon another, so as to defeat its operation ; but a party claiming the benefit of the proviso in the Statute, can only claim the benefit of the disability *existing when the right of action first accrued. Mercer vs. Selden*, 1 *Howard's U. S. Rep.* 37. *Angel on Lim.* 209, 522. *Demarest vs. Wynkoop*, 3 *Johns. Ch. Rep.* 129. *Eager vs. The Commonwealth,* 4 *Mass. Rep.* 182.

[6.] In this case, however, it will be observed that it is not necessary for the complainants to tack the two disabilities together, to avoid the operation of the Statute, inasmuch as the Statute did not commence running until 1839, at which period the trustee asserted his *adverse* claim to the property. At the time of the assertion of the *adverse* claim to the property, in 1839, by the trustee, against his *cestui que trusts*, Mrs. Haddock was *twenty-one years of age*, and a *feme covert*. At the time the Statute commenced running in favor of the trustee, against his *cestui que trust*, there existed, in fact, but *one* disability, that of *coverture.* Mrs. Haddock, therefore, being a *feme covert* at the time of the accrual of the cause of action in 1839, (that being the period from which the Statute would have ,commenced running, according to the general rule,) she is within the *exception* which is made by the 2d section of the Act of 1806, and is protected from the operation of the Statute of Limitations. *Prince*, 577. *Flynt and Wife vs. Hatchett,* 9 *Ga. Rep.* 328.

The case of *Keaton vs. Greenwood*, (8 *Ga. Rep.* 97,) is cited by the plaintiff in error, as an authority in his favor. The general principles settled in that case, in regard to the application of the Statute of Limitations to trustees and *cestui que trusts*, we now re-affirm, as we did in *Morgan vs. Morgan*, 10 *Ga. Rep.* 297.

We do not, however, hold with the Court below in its charge

to the Jury, that it was incumbent on the trustee to have given *notice* to the *cestui que trust*, that he held and claimed the trust property, *adversely* to their title; but we maintain the doctrine asserted by the Supreme Court of the U. States, in *Yeller's Lessee vs.* *Eckert et al.* that the Statute does not begin to run until the possession of the trustee—before consistent with the title of the real owner—becomes *adverse, tortious and wrongful,* by the disloyal acts of the trustee, which must be *open, continued* and *notorious,* so as to preclude *all doubt* as to the character of the holding of the property, or the *want of knowledge* on the part of the *cestui que trusts.* 4 *Howard's Rep.* 296. According to the facts of this case, as made by the record, and the legal principles applicable thereto, the judgment of the Court below must stand affirmed.