C. R. DILLON *v.* JOHN R. DAVIS and others.

## April Term, 1877.

COMPROMISE — EFFECT ON SUIT. — A payment, with full knowledge of the facts, in compromise of a pending litigation, is binding, and the court will not inquire into the question of right between the parties.

DEMURRER — EXTENT. — A demurrer which starts out by saying that the demurrants are advised that the bill, "in so far as it seeks relief against them," is demurrable, and concludes by asking that the grounds of demurrer be applied "to the parts of the bill and relief prayed to which they point and are intended to apply," and prays the judgment of the court whether they shall make any further defence to said bill, "and, if so, to what portion thereof," must be treated as a demurrer to the whole bill.

DEMURRER — ERRONEOUS DECREE THEREIN — REVIEW. — A decree sustaining a general demurrer to an original bill, and an amended and supplemental bill bringing forward new matter in addition to the old matter and supplemental matter relating thereto, upon causes of demurrer which go only to the new matter, is erroneous, and will be reversed on a bill of review.

*R. Cantrell*, for complainant in bill of review.
*Jordan Stokes*, for defendants.

THE CHANCELLOR: — This case comes before me on a demurrer to a bill of review filed, by the complainant, to review a decree of this court sustaining a demurrer to an amended and supplemental bill, and dismissing such bill.

The error relied on is, that although the demurrer was properly sustained, the decree should not have dismissed the whole bill as to one of the defendants, Burrell Bender, against whom relief was sought independent of the matter assigned in demurrèr.

The facts necessary to enable us to understand the point involved are these : On March 4, 1867, the defendant John R. Davis sold and conveyed to the complainant, C. R. Dillon, a tract of land for $10,000, half of which was paid in cash, and notes given at one and two years for the residue. Previous to this sale, the defendant A. J. White had recovered a judgment at law against John R. Davis, which was, on appeal, affirmed in the Supreme Court in January, 1867, and the land was levied upon by an execution issued on this judgment, and sold thereunder in November, 1867, to White, at $416, being the amount then due upon his judgment. On March 26, 1868, complainant took from the said Davis an assignment of his equity of redemption. On April 7, 1868, the defendant Burrell Bender, claiming to be a judgment-creditor of John R. Davis, undertook to redeem from A. J. White the land thus sold and bought by him, paying him the amount of his bid, and advancing $703 on the judgment held by him against Davis.

On October 1, 1868, the original bill in this cause was filed against John R. Davis, Samuel W. Davis, B. J. Farrar, Burrell Bender, and A. J. White. One object of the bill was to reach, for the complainant's indemnity against the encumbrances created by the White judgment and sale thereunder, and by the redemption of Bender, the interest of John R. Davis in the last note given by the complainant for the purchase-money of the land, and in other property, which note and property, it was alleged, were assigned to Farrar to secure a partnership debt of John R. Davis, Samuel W. Davis, and Farrar in a cotton speculation. Another object was to remove, as a cloud upon complainant's title, the proceedings of the defendant White in sell-

ing the land, and of the defendant Bender in redeeming it as above set out. But the bill, in the latter regard, was defective in failing to give the dates of the White judgment originally and as affirmed, and seems to have been based upon the erroneous idea that the judgment of affirmance was after the complainant's purchase, and that the lien did not relate to the date of the original judgment. The bill relied, as against the redemption of Bender, upon the ground that there was no right of redemption in Davis at the time, and that the proceedings in redemption were, so far as complainant was concerned, of no effect, and void. The prayer of the bill is that, on final hearing, "the proceedings of said White and Bender in the redemption of the land" be declared of no effect, and removed as a cloud upon the title of complainant; but, if the court should hold White's judgment to have been a lien upon the land, then that complainant be allowed to redeem by the payment of his bid, and the money is tendered accordingly. And if the court should hold that Bender had the right to redeem, then the complainant be allowed to redeem from him.

On October 14, 1868, the complainant filed an amended bill to bring before the court, as defendants, D. G. Shepard and John H. Farrar as the assignees of complainant's last note for the land and the other property sought to be reached by the original bill. On the same day, answers were filed by White, J. R. Davis, S. W. Davis, and B. J. Farrar. On May 19, 1870, D. G. Shepard and J. H. Farrar answered. On April 5, 1869, Bender filed his answer. In this answer Bender avers that he was a judgment-creditor of John R. Davis, and relies on his redemption of April 7, 1868, by virtue thereof, and insists upon the validity of his title to the land acquired thereby, should the complainant allow the time to elapse within which he is entitled to redeem. The entire litigation, as between complainant and Bender, is narrowed down, upon this state of

the pleadings, to the validity of Bender's title under the proceedings in redemption, supposing the sale under the White judgment to have been good, and the title thus acquired superior to that of the complainant, about which there could probably be no serious doubt.

In this stage of the litigation, the complainant, under the advice of counsel, concluded to buy Bender's interest, both in the land and in the judgments of White and Bender, and all rights acquired by the proceedings in redemption. Accordingly, he, on November 23, 1869, paid to Bender $1,229.26, and took his receipt therefor, in which it is recited by Bender to be "in full for all my interest in and to the tract of land sold as the property of John R. Davis on November 30, 1867, under execution from the Supreme Court in favor of A. J. White, and by me redeemed on April 7, 1868, and an advance of $703 made by me on the same, and in full for the transfer of all my right and interest in the two judgments, said Dillon being the assignee of Davis by deed." . "This arrangement," the receipt continues, "is intended as a full satisfaction of my claim in the premises, and in full redemption of said land, reference being made to the execution-docket and other proceedings in said Supreme Court for a more particular description of said land and judgments." Under his original bill, the complainant had paid into court $441.50, being the amount of White's bid on the land at the execution sale, with interest, and this money had been loaned to the defendant Bender. The receipt recites that Bender's note for this money is to be delivered up to him as part of the $1,229.26; that Dillon had accounted, in the payment, for interest on the White judgment from the date of Bender's redemption to the receipt of said $441.50, and adds: "But if the chancellor should decide that said Dillon is not liable for interest during the time said sum of $441.50 was on deposit in the Chancery Court at Lebanon, I am to refund the excess of interest."

*Primâ facie*, the settlement embodied in this receipt is

an adjustment of all the matters of litigation between the parties, except only the small item of interest and the costs ; and either party would have had the right to bring the new facts to the attention of the court by a supplemental bill. A payment, with full knowledge of the facts, in compromise of a pending litigation is binding, and the court will not inquire into the question of right between the parties, for the very object of the settlement was to avoid the risk of such an inquiry. 1 Story's Eq. Jur., sec. 131, and cases cited ; *Hubbard* v. *Martin*, 8 Yerg. 498.

After this, on April 19, 1870, the complainant files an amended and supplemental bill against John R. Davis, Burrell Bender, Samuel W. Davis, John H. Farrar, D. G. Shepard, and John C. Hubbard, administrator of Bernice Bender, deceased. This bill, after reciting the previous bills, sets out some additional matters in relation to the note and property assigned to D. G. Shepard, and calls upon him and John H. Farrar to answer as to these matters. It then recites that complainant was advised that there was great doubt as to the legal effect of the action of the defendant Burrell Bender in redeeming the land, and, " in view of this doubt, as the time of redemption was about to expire, under the advice of counsel, complainant proceeded to redeem from said Bender the said land ; and, on November 23, 1869, complainant paid to his (Bender's) counsel $1,229.26, the amount of the debt paid by said Bender, and his debt advanced on the land ; the receipt and redemption being here filed, Exhibit A, as part of this bill." The bill then states that Davis has filed his answer to the previous bills, in which he claims to have paid said Bender a large amount of usury, which he says he desires to have applied to the payment " of the judgment which complainant paid, as afore-said, in the redemption of said land." It then states that Davis had filed his bill in this court against the said Burrell Bender and John C. Hubbard, administrator of Bernice Bender, to recover said usury, and had obtained a decree

for $507.24, from which the defendants had prayed an appeal to the Supreme Court, then pending; that the defence was, that the claims in which usury was alleged to have been taken were sued on at law, and judgments recovered, and that it was now too late to go behind these judgments. Nevertheless, the bill seeks to attach the recovery, and the usury in the hands of the defendants, and calls for a discovery. The bill then proceeds as follows: " The defendant Burrell Bender is called upon to state all the facts in relation to said redemption of the land, and what amount he paid, and what claim he advanced on the land. Complainant paid said money in good faith, and if the judgment of about $703 advanced on the land, or any part thereof, was not due said Bender, complainant acted under a mistake as to the facts, and is entitled to relief. If complainant has been forced to pay said money wrongfully, and the facts are not as they were represented to him as to said indebtedness, and the amount due, complainant is entitled to have the same refunded to him." The prayer of the bill is that the funds in the hands of Bender and Hubbard be attached, " and, upon the hearing, by decree require the amount paid by him, as shown by said receipt, to be refunded to him, and he prays as he has before prayed in his original and amended bills."

This amended and supplemental bill, like all the previous bills, is very loosely worded, and leaves the exact intention of the draughtsman in some doubt as to the Burrell Bender branch of the case. I think the key to that part of the bill is to be found in the allegation that John R. Davis, in his answer to the previous bills, had claimed to have paid Bender a large amount of usury, which he wished applied to the complainant's indemnity against loss in the redemption matter. The main object of the bill was undoubtedly to recover this usury. The bill does not attack the settlement of November 23, 1869, but, in the paragraph above quoted, seems to hope that something may " turn up " in the

answer of Bender to the call for " facts " in relation to the redemption, and " amounts " paid and advanced by him on the land, to show a " mistake of facts " on complainant's part which will afford him some relief. The allegations are entirely too vague to resist a demurrer, and the learned counsel for the complainant has, in effect, conceded this by basing his argument mainly upon the prayer with which the amended and supplemental bill is closed, wherein "he prays as he has before prayed in his original and amended bills." But the only prayer of these bills, in this regard, is that the redemption be declared of no effect; or, if valid, that complainant be allowed to redeem. Such relief was abandoned by the settlement of November 23, 1869, and the defendants, the demurrants, had some reason to think that the sole object of the bill was the usury.

To this amended and supplemental bill Bender and Hubbard filed a demurrer, which, I must admit, is in as " questionable a shape " as the bill. It starts out with saying that they are advised that the bill, " in so far as it seeks relief against them," is subject to demurrer, and concludes by asking that the grounds of demurrer be applied " to the parts of the bill and relief prayed to which they point, and are intended to apply," and prays the judgment of the court whether they shall make any further defence to said bill, " and, if so, to what portion thereof." The language thus used fairly implies that there might be parts of the bill to which the grounds of demurrer would not apply. And I am not aware of any law or rule of practice which allows a demurrer in this form, nor any principle upon which the defendants could call upon this court to apply the counsel's grounds of demurrer for him, or to advise him as to the course he should pursue in putting in his client's defence. I am bound to presume that my predecessor, who acted upon the demurrer, was satisfied that the demurrer was a demurrer to the whole bill, and acted accordingly.

The grounds of demurrer assigned are, —

1. That it does not appear, from the face of the bill, that the complainant is a judgment-creditor of defendants John R. Davis or Jesse G. Frazier, and that he cannot, therefore, maintain a bill to subject the usury sought to be reached.

2. That it appears, on the face of the bill, that the usurious interest claimed was paid after judgment at law.

On November 3, 1875, the demurrer was sustained, and the bill dismissed as to the demurrants, with costs. The present bill, filed on May 3, 1876, concedes that the court properly sustained the demurrer so far as it went, and only erred in dismissing the bill as a consequence of its ruling. This concession relieves me from the necessity of determining whether the complainant, by virtue of the payment of the White and Bender judgments, and the assignment of them to him by the instrument of November 28, 1869, could be considered a judgment-creditor, by subrogation or otherwise, of Davis. It also relieves me from determining whether the second ground of demurrer assigned would be good, where the ruling of this court in. giving the decree sought to be reached was different on that very ground, so long as that judgment remained unreversed. I am glad to be spared the discussion of these rather knotty points.

A bill of review for errors of law may be filed without leave of the court. The application to the court for leave in this case, and the granting of such leave, must have gone upon the idea that the bill contained new matter; and the fact that the bill does contain new matter is conceded by the second ground of demurrer assigned. And yet the prayer of the bill itself, and the argument of the learned counsel of the complainant, seem to look only to error of law. If there be new matter, then it is a bill of review and supplement, and the second cause of demurrer, namely, that the new matter can only be presented by a supplemental bill, necessarily fails. I am myself unable to see any new

matter in the bill of review, and I confess I am very much inclined, in view of the looseness of pleading and practice all round, to act upon the suggestion of the counsel on both sides, and try to get at the merits without reference to form.

Amendments to an original bill are always considered as forming a part of the latter. *Lord Abingdon* v. *Butler*, 1 Ves. jr. 209; *Jopling* v. *Stuart*, 4 Ves. 619; *Hurd* v. *Everett*, 1 Paige, 124. The old practice was to incorporate the amendment in the original bill, but the new and better practice is to put the new matter of amendment upon the record by a separate bill. *Layton* v. *Ivans*, 1 Green Ch. 387; *Luce* v. *Graham*, 4 Johns. Ch. 172; *Walsh* v. *Smyth*, 3 Bland, 21; *Willis* v. *Evans*, 2 Ball & B. 225. A supplemental bill is also an addition to the original bill, and becomes a part of it, so that the whole is to be taken as one bill. 2 Dan. Ch. Pr. 1536, and cases cited. Though, when new parties altogether are brought before the court it is necessarily as to them an original suit. *Morgan* v. *Morgan*, 10 Ga. 297. As a general rule, the filing of an amended or supplemental bill opens the case for a new defence. *Bolton* v. *Bolton*, cited 1 Dan. Ch. Pr. 409. Thus, after a demurrer to the original bill has been overruled a new demurrer may be filed upon amendment, no matter how trifling the addition. *Bancroft* v. *Wardour*, 2 Bro. C. C. 66; *Bosanquet* v. *Marsham*, 4 Sim. 573. So, where the bill has been amended after plea. *Robertson* v. *Lord Londonderry*, 5 Sim. 226. And after an answer to the original bill the defendant has been permitted to file a plea to the whole bill. *Gambier* v. *Laheup*, 1 Dick. 44. And he may certainly put in a new answer, setting up a new and even contradictory defence. *Bolton* v. *Bolton, ut supra; Trust and Fire Ins. Co.* v. *Jenkins*, 8 Paige, 589; *Bowen* v. *Idley*, 6 Paige, 46.

So completely is an amended or supplemental bill considered as forming one bill, that the answers should, in strict practice, be entitled as answers to the original and amended bill, unless the first answers were complete, or the

order allowing the new bill limits the answers to the amendments. *De Tastet* v. *Lopez*, 1 Sim. 11; *Bennington Iron Co.* v. *Campbell*, 2 Paige, 160. And if the answer to the amended bill is not sufficient, the complainant may take both the original and amended bills for confessed. *Turner* v. *Turner*, 1 Dick. 316; *Jopling* v. *Stuart*, 4 Ves. 619. It is in consequence of the two bills being considered as one, that, where the defendant has answered the original bill, a demurrer to the new bill which contains matter already answered will either be taken from the files as irregular, or considered as overruled by the answer. *Atkinson* v. *Hanway*, 1 Cox, 360; *Ellice* v. *Goodwin*, 3 Myl. & Cr. 653. Nor can a demurrer be put in after amendment by simply adding a new party, where the defendant failed to answer the original bill in time. *Powell* v. *Cockerell*, 4 Hare, 569. But if the plaintiff so amend his bill as to make an entirely new case, leaving the original bill, as Lord Eldon expresses it, *in nubibus*, the answer must be treated as in the clouds also, and a demurrer would be in order. *Ritchie* v. *Aylwin*, 15 Ves. 79; *Cresy* v. *Beavan*, 13 Sim. 353. Our own Supreme Court is, therefore, strictly correct. when it says, *per* Nelson, J., "Upon demurrer, the amended and original bills are to be taken as one when relating to the same subject-matter." *Bradley* v. *Dibbrell*, 3 Heisk. 524.

The amended and supplemental bill of April 19, 1870, was an entirely new bill, so far as it sought to reach the supposed usury taken from John R. Davis or Frazier by the Benders, and a demurrer to that part of the bill would not be overruled by any thing in the previous answer of Burrell Bender, and was a legitimate defence. But the amended and supplemental bill did not abandon the original bill so far as it sought to set aside the sale by White and the redemption by Bender, although it certainly stated on its face what *primâ facie* was a complete defence to the relief sought. I am inclined to think it made an entirely new case, leaving the old bill *in nubibus*, and that a general

demurrer would probably have lain to the whole case as thus amended. No such demurrer was put in. The demurrer was, in fact, by its assignment of causes, confined exclusively to the bill so far as it sought to reach the usury. The court, consequently, erred in treating it as a demurrer covering the whole bill, and in dismissing the bill. The new matter of the settlement of November 23, 1869, was important, and proper to be brought before the court by supplemental bill, and the decree was fatally defective in leaving this new matter, which was clearly not covered by the causes of demurrer, undisposed of. *Moore* v. *Huntington*, 17 Wall. 417; *Randall* v. *Payne*, 1 Tenn. Ch. 137, 148.

The demurrer to the bill of review must be overruled, and the decree upon the demurrer set aside so far as it undertook to dismiss the bill, except as to the matters of usury. The complainant will pay the costs of the bill of review.