ENGLISH, administrator, v. HORN.

1. An administrator in making a sale may exercise a discretion as to demanding cash or extending credit; but if he gives credit, he must take security, ample at the time, or else be personally responsible for the amount at which the property is sold.

2. If property fairly sold by an administrator brought a price in excess of its real value, he can not, if he extended credit, escape liability for the full amount of such price merely by showing that he retained the possession of and the title to the property itself as security for the purchase-money, and that he collected and accounted for a portion thereof exceeding in amount what the property was actually worth at the time of the sale. Especially is this so when the administrator was perfectly aware that the property had sold for more than its value, and that the purchaser had deliberately bid it off with full knowledge of this fact and was therefore both morally and legally bound to pay the price at which he purchased.

Argued December 8, 9, 1897. — Decided January 10, 1898.

Citation for settlement—appeal. Before Judge Lumpkin. Fulton superior court.    June 30, 1897.

*Ellis & Gray* and *Rosser & Carter*, for plaintiff in error.

*Dorsey, Brewster & Howell* and *Arthur Heyman*, contra.

LUMPKIN, P. J.    This case by consent was tried in the court below by the judge without the intervention of a jury.    The bill of exceptions contains numerous assignments of error, but one only of them was insisted upon here.    It appears from the record, that James W. English, as administrator of Charles D. Horn, sold at public outcry two hundred shares of the capital stock of the Atlanta Bridge and Axle Company to W. B. Miles at the price of $15,000, of which the administrator collected and accounted for $6,000, and the question is whether or not, under the facts in evidence, he is liable for the remaining $9,000.    At the time of the sale this stock had little or no real value.    Upon other shares offered for sale at the same time the administrator was

unable to obtain a bid. The two hundred shares actually sold brought the large sum above mentioned, because of competition between Miles and others who desired the same in order to obtain control of the affairs of the corporation by which this stock had been issued. Miles was fully informed of its financial condition, and deliberately purchased the two hundred shares with full knowledge of all the facts, and there is nothing in the evidence to show that any fraud or deception was practiced upon him by English. The latter continued in possession of the stock sold to Miles and retained the title to the same as security for the balance of the purchase-money, but took no other security. He insists that inasmuch as he actually received and applied for the benefit of the estate a sum far exceeding the value of the two hundred shares, and also kept the stock itself as security, he exercised full diligence and should be relieved from accounting for the $9,000. The trial judge adjudicated otherwise; and his conclusion was, in our opinion, correct.

The law of the case is laid down in section 3447 of the Civil Code, the terms of which are plain and unmistakable. When the two hundred shares of stock sold for a price greatly exceeding their real value, the estate represented by English was entitled to the bargain, and it was his duty to take the necessary steps to secure its benefits for that estate. Failing to do this, the law makes him liable. The sale was fair; and this is therefore not a case where the heirs of the intestate are seeking to profit by an unconscionable advantage taken by the administrator of the purchaser at the sale. The administrator can not be relieved because he now has in hand the stock itself ready for delivery to the heirs. It is well known that articles sold at administrators' sales often bring more than they are worth; and it would never do to hold that an administrator could deprive an estate of the advantages of a bargain thus obtained, by keeping possession of the property and tendering it to those to whom the assets of the estate belong. To permit such a thing would not only be going in the teeth of the law, but would also inaugurate an exceedingly bad policy with reference to the administration of estates. English would be

liable for the $9,000 even if the circumstances had warranted the belief that holding the stock would afford ample security for the balance of the price; because the law puts upon an administrator extending credit the entire risk, unless he takes security ample at the time of the sale.    But in the present case no reason whatever is suggested for the failure to take adequate security. English was perfectly aware that the stock was practically worthless, for, as above shown, an attempt to sell more of it on the very same day that the two hundred shares were sold proved utterly futile, and he was therefore obliged to know that the stock itself amounted to no security at all.    If at the time of making the sale he had taken ample security and subsequently had lost the debt after the utmost diligence, he would have been relieved; but his failure to observe the plain requirements of the section above cited leaves him "responsible for the amount" of the price at which the stock was sold.

*Judgment affirmed.    All the Justices concurring.*