13418, 13419.  GAMMAGE *v.* PERRY, administrator; and *vice versa.*

1. "Trustees and other representatives with custody of papers have ample opportunities to discover defects in the title of property in their care, and are estopped from setting up title adverse to their trust."

2. One who applies for and procures his appointment as administrator upon the estate of another, and for a period of years deals with certain property as the property of the estate, and who then applies for and obtains from the court of ordinary a judgment granting him leave to sell, in pursuance of which he advertises and sells the property at public outcry in due form of law, executing to the highest and best bidder a deed of conveyance of the property, signed by himself as administrator, is estopped, "upon the ground of public policy and good faith," from setting up any title or interest in the property based upon a claim anterior to his appointment.

3. It must follow that no evidence by which it is sought on the part of the administrator to set up such a claim in himself adverse to the estate should be admitted; and evidence having no other purpose or value, even if admitted, can not be given any weight against such an estoppel, arising by admissions solemnly made in judicio.

4. An administrator can not purchase at his own sale directly or indirectly; a fortiori he can not acquire the title to property belonging to the

estate by a mere pretended sale, consummated under an agreement with another to the effect that the latter would buy in the property without any liability to pay the amount of his bid, and would then convey the property to the administrator in his personal capacity.

5. A transaction between an administrator and another person such as is indicated in the preceding paragraph may be treated as void by any of the heirs or distributees, but they alone have the right to elect whether the transaction will be repudiated or affirmed.

6. In such a case an heir may affirm the sale as evidenced by the administrator's deed, and hold the administrator responsible for the amount recited therein as the price for which the property was sold, or he may avoid the entire transaction.

7. The administrator can not in any case attack such a deed as invalid, upon the ground of his illegal action, either against a distributee or any other person, and will not be heard to raise the point that the heirs may or may not repudiate his act. The transaction as to him is valid and binding until it is attacked by one having the right to avoid it. He can take no advantage of his own wrong.

8. While the consideration of a deed may always be inquired into when the principles of justice require it, and while the recital in a deed of the receipt of purchase-money does not estop the maker from denying the fact and proving the contrary, these principles will not allow an administrator to dispute the truth of a solemn recital contained in his deed that the property was exposed for sale and that the highest bid was a stated sum, and that he hold the property therefor. He may deny that he has received the proceeds of the sale, but can not deny the truth of the recital that the property was sold at public outcry for a stated sum.

9. Proof by an administrator that he has not received the purchase-price of property for which his deed recites it to have been sold does not establish that he is not liable to the distributees for the price fixed in the sale, for the reason that he is liable therefor whether he collect it or not, unless he prove an inability to collect, under circumstances which in law would render excusable his failure to collect it; especially is this true where the evidence of the administrator establishes not an inability to collect, but an illegal agreement not to do so.

10. "In every case a garnishment may be issued against an executor or administrator for a legacy or distributive share, or for any debt or demand owing by said estate to any other person, if the creditor will swear — in addition to the oath required in ordinary cases — that his debtor resides without the State, or is insolvent."

11. "In such cases the executor or administrator shall not be compelled to answer the garnishment until the estate in his hands is sufficiently administered to enable him safely to answer the same;" but it is not incumbent upon the plaintiff to show the condition of the estate. This is a matter for plea or motion by the administrator.

12. "Where an affidavit for garnishment against an administrator omits the allegation that the defendant is insolvent, the omission may be supplied by amendment, unless in the meantime the garnishee, or some third party, has acted to his injury by reason of the omission."

13. A quitclaim deed by a distributee, the defendant in the judgment upon which the garnishment is based, conveying to the person who is the administrator garnished the interest of the distributee in the land illegally acquired by the administrator in the manner referred to above in paragraph 4, in which the consideration is recited as five dollars and love and affection, does not show that, by reason of the omission in the affidavit for garnishment to allege insolvency of the defendant in fi. fa., the garnishee or any third person has acted to his injury, so as to bar an amendment supplying the omission, even if made after service of the summons and before the offering of the amendment.

14. Such quitclaim deed, while ratifying the illegal acquirement of the title by the person who is administrator, does not establish an extinguishment of liability of the administrator to make good to the estate the amount recited in the administrator's deed as the price for which the property was sold.

15. The uncontradicted evidence demanded a verdict for the plaintiff in garnishment.

16. None of the evidence, the refusal to admit which is complained of in the cross-bill of exceptions, was admissible for any purpose.

DECIDED FEBRUARY 8, 1923.

Garnishment; from city court of Americus — Judge Harper. January 9, 1922.

L. O. Gammage, as transferee of an execution which had been obtained by the Planters Bank of Americus against W. H. Perry, as principal, and himself as surety, caused a summons of garnishment to be served on J. A. S. Perry, as administrator of the estate of M. L. Perry, on December 7, 1915. The garnishee, without objection to the garnishment proceeding, answered on January 21, 1916, denying indebtedness. The case was tried at the January term, 1922, of the city court of Americus. The plaintiff introduced in evidence the suit and judgment on which the execution issued; the appointment of J. A. S. Perry as administrator of M. L. Perry's estate in February, 1909; certain returns made by him as administrator, in one of which, dated January 5, 1914, the following, among other things, appeared: "On February 14, 1907, there was turned over to me as such administrator 200 acres of land in the old 16th district of said county (Sumter), being lot of land No. 250, . . said land valued at $6,000;" the administrator's application for leave to sell this land, granted in November, 1915; evidence of the sale of the land in question after advertisement and in pursuance of such leave; a deed from the administrator, J. A. S. Perry, to T. M. Ethridge, dated December 7, 1915, conveying the land mentioned, and containing the following recital: "After

advertising said land did on the first Tuesday in December, 1915, expose the same to sale before the court-house door in the city of Americus, Sumter county, Georgia, at public outcry, at which sale the same was knocked off to T. M. Ethridge, he being the highest and best bidder, for the sum of $8,000 ;" and that W. H. Perry was insolvent and was one of the heirs of M. L. Perry, deceased, whose distributive share, considered in the light of the last return of the administrator and of the recitals in the administrator's deed, would appear to be in excess of the indebtedness of the plaintiff. The garnishee introduced certain deeds by which it was sought to establish title to the land in J. A. S. Perry anterior to his appointment as administrator, and certain oral evidence to the effect that the deed from J. A. S. Perry to his wife, M. L. Perry, already in evidence, dated November 28, 1893, was without consideration and was made to her solely to enable her to procure a loan for J. A. S. Perry, and that the loan had been paid; and the garnishee testified to the effect that he had not received "one penny" from the sale of the land as administrator to T. M. Ethridge as shown by the deed dated December 7, 1915, and that he never surrendered possession of the property to Ethridge; also, "I did have an agreement with Mr. Ethridge on December 7, 1915, that he would buy it and convey it to me individually. I asked him to come and bid on it. . . I have not paid out anything to the heirs since the sale of this land." At the conclusion of the evidence the court directed a verdict for the garnishee. The plaintiff sued out a bill of exceptions, the assignment of error in which is to the effect that the evidence demanded a finding in favor of the plaintiff.

By cross-bill of exceptions the garnishee alleges that the court erred as follows: In refusing to dismiss the garnishment proceeding and in allowing an amendment thereto; in refusing to admit in evidence certain additional deeds showing a chain of title to the land mentioned in J. A. S. Perry prior to his appointment, in connection with other evidence offered and rejected to the effect that the deed from J. A. S. Perry to M. L. Perry, already referred to, was made solely for the purpose of enabling her to borrow money thereon for J. A. S. Perry, and by which it was sought to establish that M. L. Perry held only the legal title therein, while the equitable title was in J. A. S. Perry, and therefore her heir, W. H. Perry,

could not be interested in the property; in refusing to admit in evidence a deed from T. M. Ethridge to J. A. S. Perry, dated December 11, 1915, conveying the lot of land referred to; and in refusing to admit the oral evidence of the garnishee and the administrator, offered in connection therewith, to the effect that this deed was without consideration, that it was the means used to get the title back in him, J. A. S. Perry, that T. M. Ethridge never paid anything for the property and never received anything when this deed was made back to J. A. S. Perry, that the latter never surrendered possession to Ethridge pursuant to his administrator's deed, and that there was no consideration in either of the deeds referred to; in refusing to admit in evidence a quitclaim deed from W. H. Perry and others to J. A. S. Perry, dated — day of December, 1915, conveying their interest in the lot of land stated, and reciting a consideration of $5 and love and affection for the grantee, the father of the grantors. The rejection by the court of other stated evidence is complained of, but it need not be set out here in detail, since its admissibility must be determined under the same principles as that already referred to.

*J. A. Hixon, R. L. Maynard,* for plaintiff.

*Wallis & Fort,* contra.

BELL, J. (After stating the foregoing facts.)

1-3. The principles of law which will control our judgment upon the direct bill of exceptions will also dispose of the cross-bill of exceptions, with the exception of the assignment of error upon the ruling of the court upon the garnishment pleadings, and the assignment of error upon the refusal of the court to admit in evidence the quitclaim deed from W. H. Perry and other distributees to J. A. S. Perry, the garnishee.

" Trustees and other representatives with custody of papers have ample opportunities to discover defects in the title of property in their care, and are estopped from setting up title adverse to their trust." Civil Code (1910), § 5739. In the case of *Scott* v. *Haddock,* 11 *Ga.* 258, it appeared that Willis S. Scott was appointed guardian of certain orphan children in the year 1821. In his first return thereafter he scheduled a certain slave as the property of his wards; and he continued to charge himself as their guardian with the hire of the slave in his returns to the court for ten consecutive years. Scott having died, his administrator, in a

proceeding by one of the wards for an accounting, sought to show that the slave was never the property of the orphans, but the property of Willis S. Scott (the deceased guardian), by virtue of his intermarriage with the mother of the orphans, who it seems owned the slave at the time of such marriage. The Supreme Court said: " The question is, could the defendant's intestate, Willis S. Scott, if now in life, be permitted to show, as against the complainants, that the slave, Harry, was *not their property,* but *his individual property,* in the face of his *solemn admissions* to the contrary, made in his returns to the Court of Ordinary, as before stated? We are of the opinion that he could not; and consequently that his administrator is in no better condition. He would be estopped on the ground of public policy and good faith, from repudiating his solemn acts and admissions, so repeatedly made in the course of the judicial proceedings had in the Court of Ordinary in relation to that fact." See also, in this connection, *Miller* v. *Wilkins,* 79 *Ga.* 675 (4 S. E. 261). It was held in *Lyons* v. *Armstrong,* 142 *Ga.* 257 (2) (82 S. E. 651), that when an administrator applies to the ordinary for leave to sell stock as the property of the estate, and the ordinary grants him leave to sell, as prayed, he solemnly admits in judicio that the stock belongs to the estate. We think these authorities are ample support for the propositions laid down in the first three headnotes.

4-7. That an administrator can not purchase at his own sale either directly or indirectly is so well settled that the citation of authority to that effect is unnecessary. It follows even by stronger reason that he could not acquire title to property of the estate by a mere pretended sale under an agreement with another that the latter would bid upon the property and buy it in, without being liable to pay the amount of the bid, and then convey it to the administrator. But the administrator will not be heard to attack the transaction upon the ground that it was a mere fiction by which he undertook to replace the title in himself and which he would justify upon the claim that the property never at any time belonged to the estate, but in equity was his own from a date prior to his appointment. " A purchase by an administrator at his own sale is good, at least until it has been repudiated by the heirs." *Mercer* v. *Newsom,* 23 *Ga.* 151. " A sale by an executor or administrator to himself as an individual is not void, but

merely voidable, at the election of those who may be interested in the estate, but no one else has the right to have it declared void." *Tyson* v. *Bray*, 117 *Ga.* 689 (2) (45 S. E. 74). "The maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof. He is estopped from denying his right to sell and convey." Civil Code (1910), § 4189.

Certainly an administrator can not take advantage of his own wrong, and attack as invalid what he has solemnly entered into as a sale in pursuance of authority granted by the court upon his own application. If his act is fraudulent or in any manner wrongful, it does not lie in his mouth to repudiate it. It would seem that an administrator is not only estopped from attacking the transaction, but is estopped as well from raising the point that an heir may do so. As to him the transaction must be treated as valid until it is attacked by some one having the right to avoid it; and, so treating it, the administrator stands liable for the sum at which the property was bid off at the public sale as recited in the deed from him to Ethridge, unless he can in some way escape the effect of such recital.

8, 9. It is true that "the consideration of a deed may always be inquired into when the principles of justice require it (Civil Code, § 4179), but it is questionable whether the principles of justice require it under the facts here disclosed. It is also true that "the recitals in a deed of the receipt of the purchase money does not estop the maker from denying the fact, and proving the contrary." Civil Code, § 4188. These principles, however, afford no reason for holding that the administrator is not bound by the recital in his deed to Ethridge that he exposed the property for sale, and that Ethridge bid the sum of $8,000 therefor; that this was the highest and best bid and that he accordingly sold the property to Ethridge for that sum. Among the conclusive presumptions, termed estoppels, as to which an averment to the contrary will not be allowed, is that which arises from "recitals in deeds, except payment of purchase money." Civil Code, § 5736. See also Civil Code, § 5788; *Burton* v. *Meinert*, 136 *Ga.* 420 (71 S. E. 870). The administrator may show that Ethridge has not paid, but this does not relieve him from liability to the estate therefor. It was his duty to collect the amount of the bid upon the delivery of his deed. The administrator may exercise a dis-

cretion in demanding cash or extending credit, but if credit is given, he must at his own risk determine the sufficiency of the security given. If the security taken is ample at the time, but subsequently the debt is lost after the utmost diligence by the administrator, he will not be liable therefor. Civil Code, § 4023. See also *English* v. *Horne,* 102 *Ga.* 770 (29 S. E. 972).

If a bidder fails or refuses to comply with his bid when requested to do so, the administrator has the option either to sue him for the purchase-money, or to resell the property and proceed against the first bidder for any deficiency. Civil Code, § 6071.

It is perfectly clear to us that the administrator does not support his answer to the garnishment, of no indebtedness, by proving that he never received the consideration which was recited in his deed to Ethridge, when his failure was because of an illegal agreement not to do so. Instead of establishing his answer he rather disproves it.

10-13. Section 5304 provides that garnishment may in every case be issued against an executor or administrator for the legacy or distributive share, provided the creditor will swear, in addition to the oath required in ordinary cases, that his debtor resides without the State or is insolvent; also that the executor or administrator shall not be compelled to answer until the estate in his hands is sufficiently administered to enable him safely so to do. But " it is not incumbent upon the plaintiff to show the condition of the estate " in the administrator's hands. The right of an executor or administrator to the delay provided in the section cited must be asserted by him by a proper plea or motion. *Morrison* v. *Hilburn,* 126 *Ga.* 114 (3) (54 S. E. 938).

While it was held in the case of *National Lumber Co.* v. *Turner,* 2 *Ga. App.* 750 (59 S. E. 15), that garnishment proceedings which had been instituted against an administrator upon an affidavit omitting to allege insolvency of the defendant in fi. fa. were void, it was held in the later case of *Stovall* v. *Joiner,* 10 *Ga. App.* 204 (73 S. E. 22), that such an omission may be supplied by amendment unless in the meantime the garnishee or some third party has acted to his injury by reason of the omission. An examination of the *National Lumber Co.* case will show that the garnishee made no answer or appearance until after the court

had rendered the judgment against him upon the garnishment. The omission was jurisdictional, and consequently, there being no appearance, the court was without jurisdiction to proceed.

In the instant case the garnishee answered in January, 1916, without any objection whatsoever as to the validity of the process, or of the affidavit upon which it was based; and it was not until the lapse of six years,— to wit, at the January term, 1922,— that his motion to dismiss the proceedings was made.

The garnishee filed no plea setting up any fact which would show that between the time of the institution of the garnishment proceedings and the offering of the amendment the garnishee or any third person had acted to his injury by reason of the omission, as was done in the case of *Joiner* v. *Dougherty,* 14 *Ga. App.* 360 (80 S. E. 854), by reason of which the court held that the amendment there should not have been allowed. Indeed, in the latter case the garnishee at the first term asked for further time in which to make a complete answer under the terms of the Civil Code, § 5304. He later filed a motion to dismiss the proceedings, upon the ground that the affidavit failed to allege that the defendant was insolvent or a non-resident, and, simultaneously therewith and subject thereto, pleaded that the defendant had in the meantime been adjudged a bankrupt in the United States court, and that the garnishee, as administrator, had paid over the distributive share of the defendant to the trustee in bankruptcy by virtue of an order of the court of bankruptcy. The case at bar is therefore easily distinguished from the case last referred to. Furthermore, " In cases where the court has no jurisdiction, territorial or otherwise, of the subject-matter, or where there is no legal subject-matter, jurisdiction can not be waived, but in all other instances appearance and pleading, without a reservation by the pleader of his right to object later, are a waiver of all irregularities in the process, or of the absence of process, or of void process, and the service thereof." *Citizens National Bank* v. *Swift Fertilizer Works,* 16 *Ga. App.* 533 (86 S. E. 403). The case cited is supported by numerous authorities therein given.

It is contended by counsel for the garnishee in his cross-bill of exceptions that the quitclaim deed from the distributees to J. A. S. Perry, the administrator, would have shown that the relation between the defendant and the garnishee had been so changed as

to preclude the amendment, under the principle announced in the cases of *Stovall* v. *Joiner,* supra, and *Joiner* v. *Dougherty,* supra, and that for this reason, besides others, the court should have refused to allow the amendment. Even this contention could under no circumstances have been good. It is to be noted this deed was not shown to the court at the time the amendment was offered, nor was it referred to in pleadings or otherwise. It came to the notice of the court upon the trial of the case, after the plaintiff had rested and the defendant was offering his evidence, — after the amendment had been allowed. We have no hesitancy in holding that there was no error in allowing the plaintiff to amend the garnishment affidavit by alleging the insolvency of the defendant in fi. fa.

14. It is insisted by the garnishee in his cross-bill of exceptions that the refusal of the court to admit in evidence the quitclaim deed of W. H. Perry and others to J. A. S. Perry was error upon the further ground that " the judgment of the plaintiff in fi. fa. would not be a lien upon the interest of the heir at law; if not, then a garnishment would be unnecessary, but it would be subject to levy and sale;" also upon the ground that the creditor cannot recover of the garnishee when the defendant can not recover, and that " certainly the defendant can not recover . . . in the face of the deed until the deed has been set aside in a court of equity," and that the deed could not be attacked collaterally. It is assigned further that the deed was " relevant and material in the light of the state of the record." While the date of this deed is not shown and it does not appear whether it was executed before or after the summons of garnishment, and while we could upon that ground hold that no error is shown, it being the duty of him who alleges error to show it (*Tompkins* v. *Williams,* 19 *Ga.* 569 (3) ), we will not be content to decide the important question here involved simply upon a technicality, since another trial is to be had, and consequently the effect of this deed ought to be determined.

Whether made before or after the execution of the administrator's deed to Ethridge, it does not in any manner relieve the administrator of his liability under the recitals of his deed to Ethridge that the property was sold to the highest and best bidder for the sum of $8,000. The law which declares that this recital can-

not be disputed (Civil Code of 1910, § 5736) provides for no exception.

Again, a garnishment proceeding is not intended as a levy upon property, nor can an interest in realty be attached by garnishment. *Groves* v. *Bibb Sewer Pipe Co.*, 149 *Ga.* 542 (101 S. E. 190). So that, regardless of when made, the quitclaim removes nothing from the reach of the garnishment, considered from this point of view.

But let us consider it as made subsequently to the service of the summons. It recites a consideration of $5 and love and affection. Consideration for what? Clearly for whatever interest the grantors have in the property described, and not for any satisfaction of the administrator's liability for the proceeds of his "sale." It does not purport to receipt for, nor to indicate any settlement, extinguishment, or waiver of, such liability. By its own terms it can be nothing more than an affirmance of the voidable administrator's sale, with the effect only of foreclosing the possibility of repudiation of the transaction by the distributees. The administrator's liability to account for the proceeds of the sale is in no manner referred to or affected.

In view of the evidence offered by the plaintiff, the administrator can not show that he is not liable under the summons, except by proving that after the deed was executed and before the summons was served W. H. Perry was in some way satisfied in full for the amount accruing to him out of the estate by reason of the administrator's sale to Ethridge, after paying the debts of the estate, or that in some other way the claim of W. H. Perry therefor has been extinguished. No satisfaction or extinguishment whatever is attempted to be shown except by the quitclaim in question. This, we think, was altogether ineffectual for the purpose. We are of the opinion that it was not admissible for any purpose, regardless of when it was made.

15, 16. The uncontradicted evidence demanded a verdict for the plaintiff in garnishment. None of the evidence the refusal to admit which is complained of in the cross-bill of exceptions was admissible for any purpose.

It is therefore ordered that the judgment on the main bill of exceptions be reserved, and that the judgment on the cross-bill of exceptions be affirmed.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. Jenkins, P. J., and Stephens, J., concur.*