44797. GAY v. GAY, Guardian.

EBERHARDT, Judge. W. F. Gay, as the appointed guardian of J. R. Gay, filed a petition in the court of ordinary praying that letters of dismission be granted him, to which Louise Gay objected. The letters were granted and, upon appeal to the superior court, the issue was tried before a jury resulting in a verdict and judgment for the guardian. Louise Gay appeals from the judgment entered on the verdict dismissing the guardian, and from the order overruling her motion for judgment n.o.v. *Held:*

1. In answer to questions certified from this court, the Supreme Court held, in summary, that the fact that a guardian is a salaried officer and director of a corporation in which the ward owns stock, and has not accounted for the salary received, does not require the refusal of letters of dismission without regard to other factors, such as the capability of the guardian to fill the position with the corporation and the reasonableness of the compensation paid to him, and whether there has been an actual loss to, or depreciation in value of, the trust estate. See *Gay v. Gay,* 226 Ga. 90, for a more complete and accurate statement of the questions certified and the responsive answers.

2. It now becomes necessary to determine whether, as a matter of law, letters of dismission should have been refused for other reasons. One of the grounds of objection filed in the court of ordinary was that the appointment of W. F. Gay as guardian was null and void because the examination procedure prescribed by law was not followed.

The alleged incompetent entered a nursing home in Atlanta in March, 1965. The application for guardianship was filed in the Court of Ordinary of Meriwether County March 31, 1966, and the appointment was made April 18, 1966. Ga. L. 1964, pp. 499, 534-537, 658-660 (former *Code* §§ 49-604 (c),

88-506) was the authority governing this proceeding. *Code* § 49-604 provided, inter alia: "(c) In the case of a person for whom another person desires the appointment of a guardian but not an order of hospitalization [the situation here], upon application pursuant to Subsection 88-506 (a) and upon allegation that the person is mentally incompetent, resulting from mental illness or other causes, and is incapable of managing his estate, with physician's certificate to like effect being attached to such application, the court of ordinary of the county in which the allegedly mentally incompetent person is found shall take jurisdiction. Thereafter, the provisions of Section 88-506 shall govern the procedure for appointment of a guardian of the person or property or both of such person and appeal therefrom except that the court of ordinary shall not order the allegedly mentally incompetent persons hospitalized."

*Code* § 88-506 provided, inter alia: "(a) Upon the written application of any person, on oath, stating that he believes another person is mentally ill and in need of hospitalization, *such application being accompanied by a certificate of a physician stating that he has examined the allegedly mentally ill person in person not more than ten (10) days prior to the date of such application, and is of the opinion that he is mentally ill and should be hospitalized,* the court of ordinary of the county in which the allegedly mentally ill person legally resides shall take jurisdiction. . . (d) The ordinary shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing, said physicians to be residents of the county, if that number reside therein, and the county attorney. . . The commission shall be sworn to examine the allegedly mentally ill person according to the best of their ability and to report to the court their findings as to the mental condition of said person and as to his need for hospitalization. . . (f) Said examining committee shall file its written report with the court within five (5) days after completion of the examination hearing. *If said examining committee's report is not unanimous to the effect that it finds the alleged patient to be mentally ill and in need of hospitalization, the court of ordinary shall, without taking further action, terminate the proceedings and dismiss the application.*" (Emphasis supplied).

The application for appointment of a guardian in the instant

case recited: "Application shows that the certificate of Dr. V. H. Bennett, a licensed physician *who has examined said person as required by law*, accompanies this application." (Emphasis supplied). The certificate does not appear in the record. The commission required by *Code* § 88-506 (d) was directed to Claude A. Bray, Jr., attorney member, and to Drs. Jack W. Whitworth and V. H. Bennett, physician members. The report of these members, including Dr. Bennett, recited that "we, the undersigned first being sworn, *and having made such examination by inspection and proofs as the law requires*, report that, we, *and each of us*, find the said J. R. Gay to be a person incapable of managing his own estate and thus in need of the appointment of a guardian." (Emphasis supplied).

There is a presumption that public officers perform the duties of their office in the manner prescribed by law, and if there were nothing before the court but the record of appointment with these recitals we should hold, on the basis of the presumption, that the appointment of the guardian was regular and lawful. *Steele v. Steele,* 203 Ga. 505, 508 (46 SE2d 924). However, the presumption is rebuttable (*Todd v. State,* 205 Ga. 363, 365 (53 SE2d 906)), and the undisputed and unimpeached evidence of Dr. Bennett requires a finding that the appointment was not made in accordance with the mandates of the law. His testimony at the trial in superior court was: "Q. Now, Dr. Bennett, did you participate as a doctor in the proceedings when he was declared incompetent? A. *No.* Q. You were not one of the physician members of the board? A. *No, I was not.* Q. Did you or do you recall when he went to the nursing home in Atlanta ? A. I recall him going but I don't recall the exact date [March, 1965, one year prior to the institution of guardianship proceedings]. Did you ever see him after that? A. *No. I haven't seen him after that.*" (Emphasis supplied).

It thus appears that the examination requirements of *Code* §§ 49-604 and 88-506 were not met, both in regard to the pre-application examination and the examination by the commission. The order appointing the guardian was thus void. *Singer v. Middleton,* 135 Ga. 825 (70 SE 662) ; *Tucker v. Tucker,* 221 Ga. 128, 133 (143 SE2d 639) ; *Boockholdt v. Brown,* 224 Ga. 737 (164 SE2d 836). Since there is no such thing as a guardian *de facto* in this State, all the acts of

W. F. Gay as purported guardian in this case are nullities, and his returns are of no effect and inadmissible. *Bell v. Love,* 72 Ga. 125; *Dooley v. Bell,* 87 Ga. 74 (13 SE 284); *Tucker v. Tucker, supra.*

The trial court ruled that the original validity of the guardianship was immaterial on the question of the guardian's dismissal, but we cannot agree since there is no such thing as a *de facto* guardian. Dismissal under *Code Ann.* § 49-314 presupposes that there has been a validly appointed guardian and amounts to an adjudication that he has fully· and completely performed all the duties of his trust. See *Little v. West,* 145 Ga. 563, 568 (89 SE 682); *Hoke v. Walraven,* 57 Ga. App. 106 (194 SE 610). But if in law there is no guardian, there is no guardian to be dismissed.

*Maloy v. Maloy,* 134 Ga. 432 (68 SE 80), cited by appellee, does not aid him on this point. In that case an overruled caveat to application for letters of dismission was appealed to the superior court. That court simply and peremptorily granted a decree declaring the appointment of the guardian void before the application was ripe for final adjudication, and made no direct disposition of the application for discharge by granting it, denying it, dismissing it, or submitting it to the jury. The Supreme Court returned the case with direction that the judgment should dispose of the case arising under the application and objections thereto, observing, inter alia (p. 441): "Possibly, if from the whole evidence it appears, without conflict, that the appointment of the guardian was null and void and there be no estoppel preventing the caveators from setting up that contention,[1] the judge might dis-

---

[1]*Code* § 88-506 (b) required that ten days' written notice of the examination hearing on the application be given to the three nearest adult relatives of the alleged incompetent residing within the State if the notice was not waived in writing. Louise Gay, daughter, and a Georgia resident, did not waive notice, and no written notice was given her since the application for guardianship listed as the three nearest adult relatives the applicant himself, a sister residing in Atlanta and one residing in Delaware, all of whom waived the ten-day notice and consented to an immediate hearing. If this omission does not itself invalidate the appointment, as appellant contends, it does eliminate any question of estoppel.

miss the petition to discharge the guardian, on the ground that if in law there was no guardian, a dismissal of a person as such is not proper; or perhaps a verdict denying the prayer for letters of dismission might be directed; or the jury might be correctly charged on the subject, as might appear proper under the evidence."

Under the posture of the case here we conclude that the judgment denying the motion for judgment n.o.v. must be reversed with direction to enter judgment in appellant's favor and, since there is no guardian to be dismissed, the application for letters of dismission must be dismissed.

*Judgments reversed with direction. Bell, C. J., and Deen, J., concur.*

ARGUED OCTOBER 6, 1969—DECIDED MARCH 2, 1970.

*Shi & Raley, Trammell F. Shi*, for appellant.
*Heyman & Sizemore, Robert G. Young*, for appellee.