## 47706. DOWDY v. JORDAN.

ARGUED JANUARY 9, 1973 — DECIDED
FEBRUARY 15, 1973.

*David H. Fink,* for appellant.

*Cobb, Cobb, Penland & Bridges, Chandler Raymond Bridges,* for appellee.

EBERHARDT, Presiding Judge. ■ "The law will not permit a guardian to act in such way that his own personal interest may come in conflict with the interest of his ward with respect to the estate of the latter in his charge. Code §§ 38-117, 49-205; *Clark v. Clark,* 167 Ga. 1 (1a) (144 SE 787); *Wright v. Thompson,* 190 Ga. 173 (2) (8 SE2d 640); *Parnelle v. Cavanaugh,* 191 Ga. 464, 465 (2) (12 SE2d 877); *Gammage v. Perry,* 29 Ga. App. 427 (2) (116 SE 126)." *Allen v. Wade,* 203 Ga. 753 (1) (48 SE2d 538). A guardian or other trustee "must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place

himself in a position where his personal interest will conflict with the interest of the beneficiary . . . . The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed." *Clark v. Clark,* 167 Ga. 1, 5 (144 SE 787). "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust, and must exclude all selfish interest and all consideration of the welfare of third persons . . . . Reasons behind the establishment of the loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give himself the benefit of all doubts, or to make decisions which favor the third person who is competing with the beneficiary . . . The principal object of the administration of the rule is preventative, that is, to make the disobedience of the trustee to the rule so prejudicial to him that he and all other trustees will be induced to keep away from disloyal transactions in the

future. The remedies granted for disloyalty often include taking from the trustee property which he has acquired by the disloyal conduct, as, for example, a part of the capital of the trust, or profits made through self-dealing, but such relief is not, it is believed, primarily granted to prevent unjust enrichment of the trustee but for its deterrent effect. It is not necessary that the trustee shall have gained from the transaction, in order to find that it is disloyal. If the dealing presented conflict of interest and consequent temptation to the trustee, it will be stricken down, at the option of the cestui, regardless of gain or loss to the trustee. The loyalty rule is framed for the governance of all fiduciaries and not merely for trustees. As previously shown it is often applied to agents, executors and administrators, guardians, officers and directors of corporations, and others . . ." Bogert, Trusts and Trustees, § 543, pp. 473-474, 475, 480-481 (2d Ed. 1960).

While the above principles are firmly established, we have been cited no case in our own courts quite like the present one. However, cases from other jurisdictions indicate that a guardian or other trustee occupies a conflict-of-interest position and is thus in violation of his duty of loyalty where he is or may be a successor or remainderman of a substantial portion of the trust estate, particularly where his actions preserve or enhance the value of the succession. For example, in Dolbeare v. Bowser, 254 Mass. 57 (149 NE 626), a woman bequeathed to her husband a life estate in all her property with a power to invade the principal for his comfort and pleasure. The husband was mentally incompetent, and his brother, who was his heir presumptive, was his guardian. The guardian on behalf of his ward waived his rights under the will, which resulted in giving the ward a half interest absolutely. Two months later the ward died. The executor of the testatrix brought a bill in equity to set aside the waiver, alleging that the guardian in

filing the waiver was not acting for the benefit of the ward, but was acting for the purpose of increasing the estate of his ward in which he expected to share as heir at law or in which his daughter expected t share as one of the residuary legatees under the ward's will; and that the guardian gave no consideration to the interests of his ward or to the action which his ward would have taken in respect to his wife's will had he been in his right mind, but considered wholly the interests and benefits of those who would be entitled to share in the estate of the ward after his death, which had appeared imminent. In holding that "a clear violation" of the duty of loyalty was set forth, the Massachusetts court said: "It was stated in England many years ago that 'in managing the estate of a lunatic the general principle is to attend solely to the interest of the owner without any regard to the succession'; and that 'the courts have always shut out of their view all consideration of eventual interests; and consider only the immediate interest of the person under their care.' Oxenden v. Lord Compton, 2 Ves. Jr. 69, 72." Dolpeare v. Bowser, 254 Mass. 57, supra, p. 61. See also Minnehan v. Minnehan, 336 Mass. 668 (147 NE2d 533).

Similarly, in Russell v. Russell, 427 S. W. 2d 471 (Sup. Ct. Mo.), stock in a family corporation was held in trust for an income beneficiary during his life. The trustees were also stockholders and directors of the corporation and remaindermen of the trust estate under the will creating it. Instead of paying out reasonable amounts of dividends on the stock which would have benefited the income beneficiary, the trustees-directors-remaindermen retained a large proportion of the profits in the corporation which resulted in building up greater corporate values for themselves as remaindermen of the trust estate in which the stock was included. The Missouri court held that there was a conflict of interest on the part of the trustees who were also remaindermen; that the dividend policy of the trustees as directors was

improper since it deprived the income beneficiary of reasonable income and built up principal for the trustees as remaindermen at his expense; and that the representative of the deceased income beneficiary was entitled to an accounting with regard to the profits retained by the trustees-directors so as to build up their remainder interests.

In the instant case, since the guardian, as an individual, was joint tenant with his ward with right of survivorship as to the savings accounts (Code Ann. § 16-431; *Sams v. McDonald,* 223 Ga. 53 (153 SE2d 538); *Spivey v. Methodist Home of South Georgia Conference,* 226 Ga. 100 (172 SE2d 673); *Sams v. McDonald,* 117 Ga. App. 336 (160 SE2d 594); *Bracewell v. Bracewell,* 117 Ga. App. 553 (161 SE2d 390)), there can be no doubt that he occupied a conflict-of-interest position and was thus in violation of his duty of loyalty, as he stood to gain personally by preserving the savings accounts and taking the balance as the survivor. In these circumstances it could hardly be said that he was in a position to consider impartially and decide how to manage the trust estate in the best interests of his ward. It is also clear that his actions in administering the trust estate did in fact enhance the value of his personal succession. In this regard it is noteworthy that the amount he expended on the ward's behalf from all the other liquid assets, virtually exhausting those assets, coincided within a few dollars with the amount he took personally as the survivor of the savings accounts. Had he exhausted the savings accounts first, the amount the executor seeks to have him refund would be left substantially intact in the trust estate.

The guardian argues that since he was a joint tenant with the ward prior to becoming guardian, the inception of the guardianship should not destroy the joint tenancy with right of survivorship, and that under the law applicable to joint savings accounts in federal savings

and loan associations he is entitled to the accounts as the survivor. However, the question is not whether the joint tenancy was "destroyed," or whether his claim is valid under Code Ann. § 16-431 and applicable cases cited supra, but whether, under principles of fiduciary law, he should be precluded or estopped from asserting a claim to the accounts regardless of whether his claim is otherwise valid; and it is clear that the validity of the claim standing alone is irrelevant when a breach of fiduciary duty is found, and that the fact the source of his claim predated the inception of the trust does not relieve him of fiduciary duties in regard to the subject matter of the trust to which he asserts an individual claim. *Scott v. Haddock,* 11 Ga. 258; *Allen v. Solomon,* 54 Ga. 483; *Hardeman v. Ellis,* 162 Ga. 664, 682 (135 SE 195) and cases cited; *Wright v. Thompson,* 190 Ga. 173, 177 (8 SE2d 640); *Crummey v. Crummey,* 190 Ga. 774 (10 SE2d 859); *Parnelle v. Cavanaugh,* 191 Ga. 464 (12 SE2d 877); *Gammage v. Perry,* 29 Ga. App. 427 (116 SE 126). As stated in Bogert, § 543, supra p. 478: "Again a trustee may find at the commencement of the trust, or during the course of its administration, without any action on his part, that he has a property or other interest which conflicts with that of the trust beneficiaries. Here he has a duty to refuse the trust, or resign, or to remove the conflicting personal interest. He cannot prevent the existence of the conflict of interest, but he can immediately remove it."

In the instant case the guardian, if for some reason he deemed himself entitled to withdraw funds from the joint accounts for his personal use during the life of the other joint tenant, or if he desired to claim the funds as survivor after her death, should not have applied for and accepted the trust. But having done so, it was incumbent upon him as a fiduciary to withdraw the funds from the joint accounts and place them in a fiduciary account beyond his personal reach, thus removing the source of temptation and conflict of interest. Since he failed in this

duty he must be held accountable for the $13,652.15 paid over to himself personally and must refund it to the trust estate before he can be discharged.[3] *Gay v. Gay,* 226 Ga. 90 (172 SE2d 690), cited by the guardian, is the result of questions certified by us to the Supreme Court (see *Gay v. Gay,* 121 Ga. App. 287 (173 SE2d 712)), and the factual situation dealt with there is not analagous to the one under consideration here.

Accordingly the judgment of the superior court must be reversed insofar as it affirms the judgment of the court of ordinary on this point; and the denial of summary judgment to Dowdy, as executor or co-executor, is reversed as to the $13,652.15 with direction that judgment be entered in his favor against the guardian for this amount plus interest from the date of taking.

■ The second enumeration of error complains that the guardian should not have been allowed commissions on transactions which occurred in the years for which he failed to file annual returns. Code § 49-231 provides that the ordinary may, by special order, exonerate him from blame for failure to file annual returns and allow the commissions. The objection to discharge and petition for accounting specifically raised the issue of payment of these commissions; an adversary proceeding was had on the matter; and the court of ordinary ruled upon it.

---

[3]Bogert, supra, pp. 518-519, poses the situation where a trustee makes himself a co-tenant of trust property through purchase of an outstanding fractional interest. He observes that in this situation the trustee automatically gives room for possible conflict and dispute, and concludes that if the cestui is obliged to make the trustee whole for the purchase price paid for his share of the property, the trustee can have no serious ground for objecting to it being taken into the trust. In the instant case the guardian supplied none of the funds for the joint accounts, and no problem arises as to the remedy.

Hence we find no merit to the contention that there has been no "special order" of the court of ordinary.

■ The third enumeration of error complains that the guardian should not have been allowed to charge attorney fees against the ward's estate without an application to the court of ordinary. Code Ann. § 49-241 provides: "A guardian *is authorized* to provide for the estate of his ward competent legal counsel, according to the needs of the ward he represents. Either the guardian or the attorney employed *may,* by petition to the ordinary and duly served on the other, obtain a judgment fixing the attorney's fees and expenses." (Emphasis supplied.) We construe this section to mean that the guardian "is authorized" to provide for legal counsel, and in the event of a dispute between the guardian and counsel as to fees, either "may" petition the ordinary for a judgment fixing the amount. Cf. *Burch v. Williams,* 226 Ga. 10 (172 SE2d 417). There was ample proof of the need for legal counsel and of the reasonableness of the fees, and we find no error here.

*Judgment affirmed in part, and reversed in part with direction. Stolz, J., concurs. Pannell, J., concurs specially.*

PANNELL, Judge, concurring specially as to Division 1 of the opinion.

The guardian here, having unqualifiedly shown the savings accounts as belonging to the estate of his ward in the inventory prepared by the guardian and filed with the ordinary, and having subsequently treated these savings accounts as belonging to the estate of his ward with full knowledge of his interest therein, is estopped from setting up a title or interest adverse to the trust. Code § 38-117, codified from *Allen v. Solomon,* 54 Ga. 483, and *Benjamin v. Gill,* 45 Ga. 111. See also, *Harris v. McDonald,* 152 Ga. 18 (2) (108 SE 448) and *Scott v. Haddock,* 11 Ga. 258. The disbursement of the funds from these accounts, as guardian, to himself as an individual were, therefore, unauthorized and he is properly held

accountable therefor. It follows that the priority of disbursement of funds of the estate on which the majority opinion is based is irrelevant to the decision of the case on this point.

I concur in the other divisions of the opinion as written.