## A95A1926. JORDAN et al. v. STEPHENS.
(470 SE2d 733)

BLACKBURN, Judge.

Joyce S. Jordan, individually and as executrix of the estate of Loree A. Veal, Grace A. Ivey, and Ruby Owens (collectively referred to as plaintiffs) appeal the judgment rendered upon the jury's verdict in the underlying action for damages against Wilbur G. Stephens, Jr.

Prior to her death, Veal executed a general power of attorney in favor of Stephens so that he could invest her assets and provide her with ample funds to live. Thereafter, as payment for his assistance in handling her personal and financial affairs, Veal transferred certain of her assets to Stephens' name, as a joint tenant with her and with a right of survivorship. Plaintiffs brought the underlying action to recover the property in Stephens' name alleging fraud, conversion, and breach of fiduciary duty. The jury determined that the asset transfers made to Stephens from Veal were proper with the exception of the transfer of 150 shares of Wisconsin Energy Corporation stock.

1. In several enumerations of error, plaintiffs contend the trial court erred in denying their motion for directed verdict. In their motion for directed verdict, plaintiffs argued that Stephens breached his duty of loyalty to Veal by obtaining a joint tenancy interest in her assets.[1]

The law in Georgia is clear that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." OCGA § 7-1-813 (a). See also *Godwin v. Johnson*,

---

[1] By enumerations of error 2, 4, and 6, plaintiffs attempt to expand the basis of their motion for directed verdict. However, the law is clear that "[a] ground not mentioned in a motion for directed verdict cannot thereafter be raised on appeal." (Citations and punctuation omitted.) *Leader Nat. Ins. Co. v. Kemp & Son, Inc.*, 189 Ga. App. 115, 116 (375 SE2d 231) (1988). Furthermore, plaintiffs abandoned enumeration of error 5 by failing to support it with argument or citation of authority. See Court of Appeals Rule 27 (c) (2). Therefore, we do not address plaintiffs' enumerations of error 2, 4, 5, and 6.

197 Ga. App. 829, 830 (1) (399 SE2d 581) (1990) (OCGA § 7-1-813 (a) applied equally to certificates of deposit). In *Godwin*, we determined that issues of fact precluded summary judgment where defendant jointly owned stock certificates with the decedent with a right of survivorship. Therein, prior to his death, the decedent conveyed assets to the defendant. Although the defendant possessed the decedent's power of attorney, it was not used to make the conveyance. Id. at 830. The primary issue for consideration was determining the decedent's intent when he established the accounts. Id. at 831. In the present case, there was no evidence presented that Veal did not intend the assets she transferred to Stephens to belong to him at her death. In fact, the evidence indicated that Veal specifically wanted Stephens to have the assets and that Veal knew a lot of people were going to be surprised after she died.

The cases cited by the dissent are factually distinguishable from the present case, as they address situations where the guardian or trustee made transfers for their own benefit without the knowledge or approval of their ward. It is important to recognize that the present case does not involve the administration of a trust or a guardian and ward relationship. The present case is similar to *Wheeless v. Gelzer*, 780 FSupp. 1373 (N.D. Ga. 1991), wherein the decedent's second wife obtained a general power of attorney over her husband, who was in ill health. Thereafter, she transferred the ownership of stock certificates from her husband to herself and to herself and her husband in a joint tenancy with right of survivorship. One transfer was made with the husband's signature, and the other was accomplished by the wife pursuant to her general power of attorney. While recognizing that the power of attorney created a fiduciary relationship which required a duty of loyalty to the principal, the court determined that absent fraud in obtaining the power of attorney, the stock transfers were proper because an agent is not absolutely prohibited, from making gifts of the principal's property, the power of attorney expressly conferred the right to transfer stocks, and the evidence indicated that the husband intended the transfer to occur. Id. See also *LeCraw v. LeCraw*, 261 Ga. 98, 99 (401 SE2d 697) (1991).

The standard of review of the trial court's denial of the plaintiffs' motion for directed verdict is the any evidence standard. See *Williamson v. Echols*, 205 Ga. App. 453, 455 (422 SE2d 329) (1992). In the present case, the evidence indicated that Veal intended that Stephens have the assets at issue upon her death. Therefore, the trial court's denial of plaintiffs' motion for directed verdict is affirmed.

2. Although plaintiffs enumerate the trial court's charge on beneficial ownership as error, their actual argument is based upon the trial court's failure to charge OCGA § 7-1-814. The trial court charged that clear and convincing evidence of a joint tenants' inten-

tions was to be considered in determining the beneficial ownership of Veal's joint accounts. Because this is a correct statement of the law, see *Godwin*, supra, we do not find that the charge was error.

Pretermitting plaintiffs' improper attempt to enlarge their enumeration of error by their brief, plaintiffs' argument is without merit as they failed to request a charge on OCGA § 7-1-814.

3. Plaintiffs contend that the trial court erred in denying their motion for new trial in that the verdict was against the weight of the evidence with respect to the transfer of 100 shares of Marine Midland Bank stock. Plaintiffs contend that Veal's subsequent transfer of these stocks from herself and Owens as joint tenants with right of survivorship to herself and Stephens as joint tenants with right of survivorship was ineffectual because Owens' signature was not obtained.

"Both as to a motion for directed verdict and motion for new trial based on the general grounds the proper standard on appellate review is the 'any evidence' test. . . . The court construes the evidence most favorably towards the party opposing the motion for directed verdict or new trial." (Citations omitted.) *Central Nat. Ins. Co. of Omaha v. Dixon*, 188 Ga. App. 680, 681 (373 SE2d 849) (1988). In the present case, evidence was introduced to establish Veal's intention to remain the owner of her stocks until her death. See OCGA § 7-1-812 (a). Therefore, Veal was the only party with the present right to withdraw or change her accounts, and her signature was sufficient to change the terms of the account. See OCGA § 7-1-816.

4. In their final enumeration of error, plaintiffs contend the trial court erred in failing to give their requested charge on the presumption which arises from the failure of a party to produce evidence. Plaintiffs argue that they served Stephens with a notice to produce all bank statements and deposit slips for accounts at Spivey State Bank in Stephens' and Veal's names. Plaintiffs contend that as vice president of Spivey State Bank, Stephens had access to such accounts. However, the notice to produce was sent to Stephens as a party to this litigation in his individual capacity as opposed to his capacity as the vice president of the bank. Stephens' failure to produce documents not under his individual control cannot be the basis of the requested charge. Therefore, as the charge was not supported by the evidence, the trial court did not err in refusing to give it.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as it is my view that Georgia's long-standing rule requiring fiduciaries to stand in a position of complete loy-

alty to their charge prevents Stephens from benefiting beyond the compensation specifically provided pursuant to OCGA § 53-12-173.

On August 28, 1987, Loree A. Veal went to Wilbur G. Stephens, Jr., a vice president at Spivey State Bank, and asked him to take over her financial affairs. Stephens agreed and, at first, refused payment for his services. Veal gave Stephens a general power of attorney providing him with express authority to act on Veal's behalf "to do any and all things that [she] might or could do if [she] were personally present. . . ." Veal also opened a safety deposit box at Spivey State Bank, gave Stephens authority to access the safety deposit box, gave Stephens certificates of deposit and executed a last will and testament in the presence of Stephens' secretary and another bank employee. Veal named Stephens as executor of her estate, but did not name him as a beneficiary under the will. She later transferred various assets to Stephens as a joint tenant with rights of survivorship. And according to Stephens' allegations in the pretrial order, this was done because Loree Veal promised that these jointly held assets "would be his at her death." Stephens altered his story during trial, however, explaining that "everything that was in her name or however at her death would be mine to dispose of as I saw fit. . . ."

In December 1987, Loree A. Veal suffered a stroke. Eight months later, she had a heart attack and died. Veal was then 81 years of age. Soon after the funeral, Stephens claimed the bulk of Veal's remaining assets and probated Loree A. Veal's last will and testament. Stephens resigned as the estate's executor after his fiduciary capacity was challenged by Veal's cousin, primary testamentary beneficiary and alternate executrix, Joyce S. Jordan. Stephens, however, refused to give up the assets he believed were rightfully given to him in exchange for his fiduciary services to Veal. Jordan, individually and as executrix of Loree A. Veal's estate, Grace A. Ivey and Ruby Owens (plaintiffs) brought this action against Stephens to recover this property, alleging fraud, conversion and breach of fiduciary duty. The case was tried before a jury, and a verdict was returned for plaintiffs, but only for certain stock that was transferred to Stephens via a tainted transaction.

It is my view, that the case sub judice is controlled by *Dowdy v. Jordan*, 128 Ga. App. 200 (196 SE2d 160), where a guardian of an estate was estopped from setting up title or interest in property that was once held by him in trust. In *Dowdy*, this Court held as follows: " 'The law will not permit a guardian to act in such way that his own personal interest may come in conflict with the interest of his ward with respect to the estate of the latter in his charge. Code §§ 38-117, 49-205[, now OCGA § 24-4-26]; *Clark v. Clark*, 167 Ga. 1 (1a) (144 SE 787); *Wright v. Thompson*, 190 Ga. 173 (2) (8 SE2d 640); *Parnelle v. Cavanaugh*, 191 Ga. 464, 465 (2) (12 SE2d 877); *Gammage v. Perry*,

29 Ga. App. 427 (2) (116 SE 126).' *Allen v. Wade*, 203 Ga. 753 (1) (48 SE2d 538). A guardian or other trustee 'must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary. . . . The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed.' *Clark v. Clark*, 167 Ga. 1, 5[, supra]. 'One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust, and must exclude all selfish interest and all consideration of the welfare of third persons. . . . Reasons behind the establishment of the loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give himself the benefit of all doubts, or to make decisions which favor the third person who is competing with the beneficiary . . . The principal object of the administration of the rule is preventative, that is, to make the disobedience of the trustee to the rule so prejudicial to him that he and all other trustees will be induced to keep away from disloyal transactions in the future. The remedies granted for disloyalty often include taking from the trustee property which he has acquired by the disloyal conduct, as, for example, a part of the capital of the trust, or profits made through self-dealing, but such relief is not, it is believed, primarily granted to prevent unjust enrichment of the trustee but for its deterrent effect. It is not necessary that the trustee shall have gained from the transaction, in order to find that it is disloyal. If the dealing presented conflict of interest and consequent temptation to the trustee, it will be stricken down, at the option of the cestui, regardless of gain or loss to the trustee. The loyalty rule is

framed for the governance of all fiduciaries and not merely for trust-ees. As previously shown it is often applied to agents, executors and administrators, guardians, officers and directors of corporations, and others . . .' Bogert, Trusts and Trustees, § 543, pp. 473-474, 475, 480-481 (2d Ed. 1960)." *Dowdy v. Jordan*, 128 Ga. App. 200, 204-206 (1), supra, cited with approval in *Loftis v. Johnson*, 249 Ga. 794, 795 (294 SE2d 511).

Although the disputed issues at trial in the case sub judice re-lated to Stephens' alleged duplicity in managing and disposing of Lo-ree A. Veal's assets both before and after her death, certain facts re-main undisputed. That is, Stephens was charged with managing Veal's financial affairs when Veal's assets were transferred to Ste-phens as a joint tenant, and Stephens continued to serve as Veal's fi-duciary long after these transfers. It is my view that this evidence bars Stephens from asserting any claim, title or interest in the prop-erty that was charged to his trust during Veal's life. See *First Nat. Bank of Paulding County v. Cooper*, 252 Ga. 215, 216 (312 SE2d 607). Nonetheless, the majority would draw an exception to Georgia's long-standing rule requiring complete loyalty of a fiduciary simply be-cause the jury found that Stephens acted, to a large extent, with Veal's consent in transferring trust assets to himself, as a joint ten-ant with rights of survivorship. This view, however, ignores the pre-cept (as suggested by the Uniform Trusts Act) that any transaction involving a transfer of trust property is so dangerous to the benefici-ary that a beneficiary's advance consent to such conduct is void, as a matter of policy. See Bogert, Trusts and Estates (2d ed. rev. 1993), p. 422, § 543 (U), p. 439.

Although the asset transfers Stephens made to himself as Veal's joint tenant were purportedly accomplished with Veal's express con-sent, it is undisputed that Veal's assets were to be managed exclu-sively for her maintenance and care until her death. Stephens' loy-alty therefore became an ongoing issue the moment Veal promised him an interest in her estate. Consequently, however innocent the transfer of trust assets to Stephens as a joint tenant may have been, it was poisonous from the inception, and Stephens should have there-after removed the conflict or resigned as trustee. The jury's findings regarding issues relating to Loree A. Veal's promises to Stephens or to Stephens' alleged chicanery were therefore meaningless. Georgia's loyalty rule prevents Stephens from benefiting as Veal's fiduciary be-yond the compensation specifically provided by law. See OCGA § 53-12-173.

I believe the trial court erred in failing to grant plaintiffs' motion for directed verdict. As a matter of public policy, Stephens should not be permitted to acquire property that was once held by him in trust for Loree A. Veal. *Dowdy v. Jordan*, 128 Ga. App. 200, 204 (1), 210,

14

supra.

DECIDED MARCH 15, 1996 —
RECONSIDERATION DENIED MARCH 29, 1996 —

*Karen West, W. W. Larsen, Jr.*, for appellants.
*Robert S. Reeves*, for appellee.