A96A0662. MOORE et al. v. SELF.
(473 SE2d 507)

ANDREWS, Judge.

Catherine J. Moore and her daughter, Nancy Moore Self, jointly opened two bank accounts and one stock investment account and jointly purchased certain real property. The accounts were opened and title in the real property was taken by Ms. Moore and Ms. Self in

joint tenancies with rights of survivorship. The accounts were funded and the real property was purchased with funds provided by Ms. Moore. Ms. Moore was subsequently declared an incapacitated adult, and Ms. Self was appointed guardian of the person and property of Ms. Moore. After Ms. Moore died on July 9, 1994, Robert S. Moore and Steiner J. Moore, the surviving sons of Ms. Moore, brought the subject action against their sister, Ms. Self. The action alleged that, upon the death of their mother, Ms. Moore, any title to property held in the joint tenancies in which Ms. Self claimed survivorship rights should be impressed with a constructive trust in favor of Ms. Moore's estate.

The Moore brothers and Ms. Self filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Ms. Self and denied the Moore brothers' motion for summary judgment. Robert and Steiner Moore appeal.[1]

1. In their first enumeration of error, the Moore brothers claim the trial court erred by denying their motion for summary judgment and by granting summary judgment to Ms. Self because the joint tenancies in the accounts and real property terminated in March 1994, prior to Ms. Moore's death, when Ms. Moore was declared an incapacitated adult and a guardian was appointed over her person and property. Accordingly, the Moore brothers claim Ms. Self had no joint tenant rights of survivorship in the property at issue, and the accounts and real property, which were funded and purchased solely by Ms. Moore, became part of Ms. Moore's estate upon her death.[2]

It is undisputed that Ms. Moore was declared an incapacitated adult due to her advanced age and memory deficits and that Ms. Self was appointed guardian of Ms. Moore's person and property on March 24, 1994 by the Probate Court of DeKalb County. We find no merit in the Moore brothers' claim that the joint tenancies in the accounts (see OCGA §§ 7-1-813; 14-5-8) and in the real property (see OCGA § 44-6-190) terminated as a matter of law when Ms. Moore was declared incapacitated and a guardian was appointed for her person and property pursuant to OCGA § 29-5-1 et seq. Assuming Ms. Self would otherwise have been entitled to the balance of the joint accounts and the jointly held real property after the death of Ms. Moore, the fact that Ms. Moore was declared incapacitated and a

---

[1] Since Self has not raised any question as to the Moore brothers' standing to seek imposition of a constructive trust in favor of Ms. Moore's estate, we do not address this issue. See *Dorsey Heating &c. Co. v. Gordon*, 162 Ga. App. 608, 610 (292 SE2d 452) (1982).

[2] Although this appears to be an entirely different claim from the allegations made in the complaint, and the Moore brothers did not attempt to amend their complaint prior to summary judgment, Self does not claim surprise, and it appears the parties argued the merits of this claim before the trial court on summary judgment. Accordingly, we address it. Compare *Allen v. Bergman*, 201 Ga. App. 781, 783-784 (412 SE2d 549) (1991).

guardian was appointed did not terminate the joint tenancies and thereby destroy the survivorship rights of Ms. Self. See Annotation: Effect of Incompetency of Joint Depositor Upon Status and Ownership of Bank Account, 62 ALR2d 1091, 1100, § 5. The appointment of a guardian for Ms. Moore did not divest her of legal interest in the joint tenancies. "A guardian, unlike a trustee, has no beneficial title in the ward's estate. A guardian is merely a custodian or manager. The possession of the guardian is deemed to be the possession of the ward." *Donehoo v. Commercial Bank &c. Co.*, 124 Ga. App. 588, 589 (184 SE2d 690) (1971).[3]

Accordingly, the trial court did not err by denying the Moore brothers' motion for summary judgment on this ground.

2. We agree with the Moore brothers, however, that the trial court erred by granting summary judgment in favor of Ms. Self as to her survivorship rights in the property at issue. Ms. Self filed the petition seeking to have herself appointed as guardian of the person and property of her mother, Ms. Moore. In the petition, Ms. Self listed the jointly opened accounts and the jointly purchased real property as property belonging to the proposed ward, Ms. Moore. There was no indication in the petition that Ms. Moore actually held this property in joint tenancies with rights of survivorship with Ms. Self, individually, and no indication in the record that Ms. Self otherwise revealed this fact to the Probate Court or to her brothers.

A guardian owes a duty of undivided loyalty to his ward and must not place himself in a position where his individual interests conflict or may conflict with the interests of the ward. *Dowdy v. Jordan*, 128 Ga. App. 200, 204-205 (196 SE2d 160) (1973). The purpose of the loyalty rule is to insure that the acts of the guardian are above suspicion and that the ward receives the guardian's unbiased and uninfluenced judgment. Id. "[I]t is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the [guardian] personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the [guardian] is placed under temptation and is apt in many cases to yield to the natural prompting to give himself the benefit of all doubts. . . . The principal object of the administration of

---

[3] Of course, a guardian's authority over property held by the ward in a joint tenancy with rights of survivorship is not equal to the personal authority which was possessed by the ward prior to the declaration of incapacity, but would be limited to use of the property to the extent authorized by the powers and duties of the guardian with respect to the person and property of the ward. See OCGA §§ 29-5-3; 29-5-4.

the rule is preventative, that is, to make the disobedience of the [guardian] to the rule so prejudicial to him that he and all other [guardians] will be induced to keep away from disloyal transactions in the future. . . . It is not necessary that the [guardian] shall have gained from the transaction, in order to find that [he] is disloyal. If the dealing presented conflict of interest and consequent temptation to the [guardian, equity will provide a remedy at the option of the ward or his estate] regardless of gain or loss to the [guardian]." (Citations and punctuation omitted.) Id. at 205-206.

In this case, there has been no allegation and there is no evidence that Ms. Self, as guardian, misused any jointly held property for her individual purposes or that she took any other action calculated to preserve the value of the jointly held accounts and real property to benefit her individual survivorship rights. Nevertheless, "since the guardian, [Ms. Self], as an individual, was joint tenant with [her] ward with right of survivorship as to the [accounts and real property], there can be no doubt that [she] occupied a conflict-of-interest position and was thus in violation of [her] duty of loyalty, as [she] stood to gain personally by preserving [the accounts and real property] and taking the balance as the survivor." Id. at 208. Although the record shows that, after Ms. Self undertook the duties of guardian, she partially eliminated the conflict of interest by placing a small portion of the jointly held accounts in a guardianship account beyond her individual reach, the large majority of the property at issue remained in the joint tenancies with rights of survivorship while she acted as guardian. As we held under similar circumstances in *Dowdy*, supra at 209, if Ms. Self intended to claim title to the jointly held accounts and real property as the survivor after her mother's death, she should not have applied for and accepted the guardianship.

Ms. Self, without qualification, listed the accounts and real property at issue as the property of the ward with full knowledge of her own individual joint tenancy interest. Thus, she knowingly placed herself in violation of her duty as guardian to give undivided loyalty to her ward. Although Ms. Self's violation of the loyalty rule did not result in termination of the joint tenancies as a matter of law, she is estopped under principles of fiduciary law from asserting any claim to the property at issue as a joint tenancy survivor adverse to Ms. Moore's estate, regardless of the legal viability of the joint tenancies and any claim she would otherwise have had to survivorship rights. *Dowdy*, supra at 209-211; see *Scott v. Haddock*, 11 Ga. 258 (1852); *Scoggins v. Strickland*, 265 Ga. 417 (456 SE2d 208) (1995); compare

*Jordan v. Stephens*, 221 Ga. App. 8 (470 SE2d 733) (1996).[4] This does not preclude Ms. Self from otherwise claiming an interest in the property from her mother's estate as an heir at law or as a legatee or devisee under a valid will. See *Parnelle v. Cavanaugh*, 191 Ga. 464, 465-466 (12 SE2d 877) (1941).

3. Under the circumstances, the applicable statute of limitation began to run when Ms. Self, after listing the subject property as the property of the ward with full knowledge of her own individual interest in the property, assumed the duties of guardian and later asserted a claim to the property adverse to title in the ward's estate after Ms. Moore's death. See *Scott*, supra; *Grant v. Hart*, 192 Ga. 153, 163-165 (14 SE2d 860) (1941); *Phillips v. Jordan*, 250 Ga. 19 (295 SE2d 327) (1982); OCGA § 9-3-27. Contrary to Ms. Self's contention, the Moore brothers' claim, brought about a month and a half after the death of Ms. Moore, was well within any applicable statute of limitation.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Smith, J., concur.*

DECIDED JUNE 7, 1996 —
RECONSIDERATION DENIED JULY 2, 1996 — 

*Anthony Kirkland, Christopher J. McFadden*, for appellants.
*McCurdy & Candler, Donald C. Suessmith, Jr.*, for appellee.

---

[4] In light of this conclusion, we need not address the issues raised in the Moore brothers' second enumeration of error concerning whether Ms. Self could otherwise exercise a joint tenant survivorship claim in the property.