### 46326, 46367.   CHEROKEE CREDIT LIFE INSURANCE COMPANY v. GLISSON et al.; and vice versa.

WHITMAN, Judge. These appeals arise out of a suit on an alleged policy of credit life insurance. The suit was instituted by Mrs. Gertrude G. Glisson, as administratrix of the estate of her husband, Rufus Paul Glisson. The Bulloch County Bank was later made a party plaintiff by order of court pursuant to a motion by the defendant insurance company. Both sides made motions for summary judgments and both motions were denied. Both rulings were appealed and enumerated as error. *Held:*

1. The following uncontradicted facts appear from the record: Rufus Glisson procured a loan from the Bulloch County Bank and as a part of that transaction the bank prepared Group Credit Insurance Certificate No. 14773 in order to effect insurance on the life of Rufus Glisson in a certain amount. The premium was paid in full to the bank.

The certificate contained the following proviso: "Cherokee Credit Life Insurance Company hereby certifies that under and subject to the terms of a Master Group Credit Insurance policy issued to the creditor named on the reverse side, the debtor, *if he is in insurable health at the time the certificate is written,* is insured for one or more of the coverages listed . . ." (Emphasis supplied).

The master policy, under which the certificate was issued, provides: "18. The creditor is hereby authorized to issue certificate

of insurance on the company's forms to the debtor when the latter has complied with the requirements for coverage hereunder and when the creditor believes him to be in insurable health. The creditor is further authorized to collect the premium due from debtors for such coverage, in accordance with premiums quoted in paragraph 8. 19. *If, in accordance with the underwriting rules of the company, the debtor is found to be unacceptable as an insurance risk on this plan, the insurance shall not become effective* as above provided, nor otherwise, and notice to that effect shall be mailed by the company to the debtor and creditor, accompanied by a check for the return of the premium received by the company, within 30 days from the date the completed certificate is received in the home office." (Emphasis supplied).

The loan was made, the insurance certificate prepared and the premium paid, all on December 10, 1969. The procedure of the Bulloch County Bank was to forward the various certificates of insurance which it had prepared to the insurance company twice each month, i.e., about the 1st and 15th of each month. The certificate relating to Rufus Glisson was received by the defendant on December 19, 1969. The defendant conducted an investigation as to the health and habits of Rufus Glisson, which revealed him to be, as of December 10, 1969, in poor and uninsurable health under its underwriting rules. In a letter from the insurance company to the bank dated January 16, 1970, and received by the bank on January 19, 1970, the bank was informed: "Information developed by our Underwriting Department reveals a questionable health history in this case; therefore, we cannot make the insurance effective, and it is hereby canceled." A check for the premium received was returned with the letter. Rufus Glisson died on January 18, 1970. At the time of the loan and insurance certificate preparation, and for several years previously, Glisson was receiving frequent treatment for cardio-vascular disease, supra ventricular tachycardia, hypertension, and arterio-sclerosis.

2. "A contract of group insurance is made up of the master group policy and the certificate, which must be construed together. The certificate holder is bound by the provisions of the group

policy, the certificate being evidence of coverage thereunder." *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579 (1b) (168 SE2d 171). In the present case the defendant required that Glisson must be in insurable health at the time the certificate was written and that if he was found to be an unacceptable insurance risk the insurance would not become effective. This condition is in no wise contrary to the statutes regulatory of credit life insurance. "The term of any credit life insurance or credit accident and sickness insurance shall, *subject to acceptance by the insurer,* commence on the date when the debtor becomes obligated to the creditor . . ." *Code Ann.* § 56-3305 (Ga. L. 1960, pp. 289, 745). As to ordinary life insurance: "Our courts uniformly hold an application for life insurance is a mere offer or proposal that may be accepted or rejected by the insurer . . . Where the applicant dies before the company passes upon the application, there is no liability, even when the premium paid by the applicant in anticipation that the policy will be issued is not returned until after his death." (Citations omitted). *Watkins v. Coastal Life Ins. Co.,* 118 Ga. App. 145, 148 (162 SE2d 788).

In this case it is obvious that the defendant in accordance with policy provisions timely investigated the acceptability of Glisson as an insurance risk and determined him to be unacceptable. This determination was made and notice thereof mailed before Glisson's death. That this letter was not received until one day after his death is not material.

The lower court did not err in denying the plaintiff's motion for summary judgment. However, the defendant's motion should have been granted.

*Judgment in Case 46367 affirmed; judgment in Case 46326 reversed. Hall, P. J., and Eberhardt, J., concur.*

SUBMITTED JUNE 30, 1971—DECIDED OCTOBER 5, 1971.

*Anderson & Sanders, Faye Sanders,* for appellant.

*Allen, Edenfield, Brown & Franklin, James B. Franklin,* for appellees.