### 47831. COATES v. VULCAN LIFE & ACCIDENT INSURANCE COMPANY et al.

HALL, Presiding Judge. Plaintiff appeals from the grant of defendants' motions for summary judgment.

1. The motion to dismiss is denied.

2. On July 2, 1970, the deceased Hugh Coates signed a note payable to the Bank of Dade in a principal amount

which included among other things the sum of $87.20 for credit life insurance under a group insurance contract between the bank and Vulcan Life & Accident Insurance Company agreeing to insure any person approved for a loan by the bank. The policy provided that: insurance of any debtor becomes effective on the debtor's making application to the creditor bank for insurance and payment of premium to creditor and forwarding of same to the insurer "provided the debtor is in sound health"; creditor is required on the 10th of each month to furnish the insurer with information on each debtor applying for insurance during the preceding calendar month; creditor is authorized to issue a certificate of insurance on company forms to the debtor and to collect the premiums "when the latter has complied with the requirements for coverage hereunder and when the creditor believes him to be alive and in sound health." The certificate also states that it shall not take effect "unless the insured-debtor is alive and in sound health on the effective date hereof."

Code Ann. § 56-3306 requires that all group credit life insurance shall be evidenced by a certificate of insurance which shall be delivered to the debtor. "If said . . . group certificate of insurance is not delivered to the debtor at the time the indebtedness is incurred and if an identifiable charge is made to him for credit life insurance" a copy of the notice of proposed insurance "shall be delivered to the insured debtor at the time such indebtedness is incurred . . . Upon acceptance of the insurance and within 30 days of the date upon which the indebtedness is incurred, the insurer shall cause the . . . group certificate of insurance to be delivered to the debtor." It is contended by the plaintiff administratrix of the deceased that this statute is contrary to and takes precedence over a policy provision as follows: "If in the sole judgment of

the company the insured debtor is found to be unacceptable as an insurance risk on this plan, the insurance may be cancelled by notice to the effect mailed by the company to the creditor beneficiary accompanied by a check for the return of premium received, if any, by the company, within 30 days from the date the completed certificate is received in the home office of the company." After that date an incontestable clause becomes effective.

The chronology is as follows: Hugh Coates was hospitalized on June 30, 1970, and believed himself to be suffering from influenza or pneumonia; he signed the note and thereby obtained the bank loan on July 2 which renewed a previous loan; on July 9 the bank filled out a certificate of insurance which was retained in its file and not delivered to the debtor; on July 10 Coates returned home from the hospital with a medical referral to a specialist, whom he promptly saw. On July 16 he was again hospitalized and one of his lungs was surgically removed because of a malignant tumor. On August 4 the bank forwarded the certificate of insurance to the insurer, which initiated an investigation, and on August 19 received a medical report detailing the above information. It thereupon wrote the bank on the same day that the debtor was unacceptable as an insurance risk and returned the premium, which the bank returned to Coates, advising him of this action, on August 21.

Coates died on February 25, 1971, from the effects of the malignancy. On the same date the bank received a letter signed by Coates enclosing a second check for the premium and stating his present understanding was that the insurer had no right to cancel. This check was returned to the plaintiff on February 26.

We agree that statutory provisions for the cancellation of group life insurance must be followed and will take  precedence  over  policy provisions conflicting

therewith. See *Thames v. Piedmont Life Ins. Co.,* 128 Ga. App. 204. However, the provision of Code Ann. § 56-3306 above quoted must be construed in connection with Code Ann. § 56-3305 to the effect that the term of any credit life insurance shall be *subject to acceptance by the insurer.* Under the same factual situation present here, the debtor was held not covered in *Cherokee Credit Life Ins. Co. v. Glisson,* 124 Ga. App. 527 (184 SE2d 479). There, the applicant was not in sound health when the application was made, acceptance was refused by the insurer within 30 days from the date of the indebtedness, due to the fact that the bank forwarded applications for credit life insurance at two week intervals, and the insured died two days after the letter declining coverage was written. Here the applicant was not in sound health and was actually hospitalized when the application was made. The company acted within 30 days of notice in declining the risk, although somewhat over 30 days from the date of indebtedness because the bank's list of debtors was sent in monthly, and the applicant was not in sound health at the time of the application or at any time thereafter. Further, the applicant failed to dispute the nonacceptance of the risk but accepted and retained the returned premium for over six months and until two days before his death from cancer.

We do not here decide under what circumstances negligence or delay on the part of the bank in forwarding the names of applicants to the insurer would work a different result. The obvious purport of the statute is to make credit life insurance subject to prompt availability or rejection. Any nonaction on the part of the insurer or its agents which would change the debtor's position to his detriment might well work an estoppel. It is clear from the facts in this case that the action was taken promptly in accordance with standard business procedures and that at no time after

July 2, 1970 was the applicant in sound health so as to be an insurable risk. The insurer was justified in declining coverage.

The trial court did not err in granting defendants' motions for summary judgment.

*Judgment affirmed. Clark, J., concurs. Evans, J., concurs specially in the judgment.*

ARGUED JANUARY 8, 1973 — DECIDED APRIL 4, 1973.

*Willie V. Miller,* for appellant.

*Fletcher & Watson, Dennis D. Watson,* for appellees.

EVANS, Judge, concurring specially. 1. Bank of Dade, one of the defendants, moved to dismiss the appeal because while the case was docketed on November 13, 1972, appellant's enumeration of errors and brief were filed not earlier than December 11, 1972, which was more than 20 days after this appeal was docketed, and was a failure by appellant to comply with Rule 14 (a) of the Court of Appeals.

But, effective March 2, 1972, the Court of Appeals amended said Rule 14 (a) and in effect eliminated any time limit for filing enumerations of error. Failure to file within 20 days is very lightly dealt with in this language in our amended rules, to wit: "Failure to file the enumeration of errors within the time specified in these rules shall be *subject to contempt.*" (Emphasis supplied.)

I have been on this court for three and one-half years and thus far no one has been held in contempt during my tenure. But, should the Court of Appeals *make up an order directing the filing of the enumerations of error,* the subsequent failure to comply therewith renders the case subject to dismissal. Therefore, until that order is made and not complied with, appellants seem to have little or nothing to worry about.

This is not in accord with my feelings about such matters. I believe there ought to be a definite and fixed

time-table and schedule, and except for providential cause, dire results should attend the failure to comply with same.

I do not favor penalizing the vigilant and diligent attorney by allowing his tardy brethren to compete with him in the practice of law on equal terms. There is a rule in equity which applies with equal force to the entire practice of law, as follows, to wit: "Equity aids the vigilant and not the slothful." See *Raines v. Clay,* 161 Ga. 574, 578 (131 SE 499).

Our present-day tendency to liberalize the rules and to ignore time requirements is the very opposite of the above equitable rule and simply means that, "equity aids the slothful, and completely disregards the vigilant."

2. As to the second division of the opinion, I concur in the judgment only.